ATKINS et al., Appellants,

v.

GENERAL MOTORS CORPORATION, Appellee.

[Cite as *Atkins v. Gen. Motors Corp.* (1999), 132 Ohio App.3d 556.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17492.

Decided March 31, 1999.

*David R. Salyer,* for appellants.

*John M. Kunst, Jr.* and *Jeffrey P. Hinebaugh,* for appellee.

FAIN, Judge.

Plaintiffs-appellants, Emma and Myron Atkins, appeal from a summary judgment rendered in favor of defendant-appellee, General Motors Corporation ("GM"), with respect to Mrs. Atkin's products liability action, involving the hinges on the side cargo door of the Atkinses' GM-manufactured van, and Mr. Atkin's derivative loss of consortium claim. The Atkinses assert that the trial court erred by granting summary judgment to GM on the basis that expert testimony was needed to establish the material elements of a products liability claim in this case, because the hinges at issue are "exceedingly complex," and the Atkinses had indicated they would not be offering any expert testimony in support of their claims. The Atkinses argue that they did not need to present expert testimony to prove the elements of their manufacturing and design defect claims because the hinges are not complex as the trial court found. The Atkinses further argue that they presented sufficient evidence to create a triable issue of fact with respect to each of the material elements of their manufacturing and design defect claims.

We conclude that the trial court properly granted summary judgment to GM on the Atkinses' manufacturing defect claim, because the Atkinses have never shown or even claimed that the hinges deviate in any material way from GM's design specifications, formula, or performance standards, or from otherwise

identical units manufactured to the same design specifications, formula, or performance standards. Nevertheless, we conclude that the trial court did err in granting GM summary judgment on the Atkinses' design defect claim, because the hinges on the side cargo door of the Atkinses' GM-manufactured van were not so complex as to require the presentation of expert testimony in order to establish the elements of a design defect claim, and the evidentiary materials presented by the Atkinses in response to GM's summary judgment motion were sufficient to raise triable issues of fact with respect to each element of the claim. Accordingly, the judgment of the trial court rendered against the Atkinses upon their manufacturing defect claim is *affirmed,* the judgment rendered against the Atkinses upon their design defect claim is *reversed,* and this cause is *remanded* for further proceedings consistent with this opinion.

I

On November 21, 1995, Mrs. Atkins was in the parking lot of a local supermarket, loading groceries through the side cargo door of her 1995 Chevrolet 350 Pacesetter van, manufactured by GM. After she had finished loading her groceries, Mrs. Atkins boarded the vehicle through the same side door. As she attempted to close the side door, she discovered that it was stuck. After placing her right foot on the pavement and her left foot on the running board in order to gain leverage, Mrs. Atkins exerted great force in an attempt to close the door. Suddenly, the door gave way, slamming into her right hip, and injuring her.

Following the incident, Mr. Atkins took the van to Smedley's Chevyland (where the Atkinses had purchased the vehicle in 1994) in order to have new carpeting installed in the van interior. While there, the Atkinses informed an employee about the problems they had experienced with the door hinges. A service technician at Smedley's subsequently removed and replaced the hinges on the side cargo door of the Atkinses' van. The hinges were kept for thirty days pursuant to the dealership's standard practice, and then discarded.

After the hinges were replaced, the Atkinses went to Joe Johnson Chevrolet, where they were given Trade Service Bulletin, No. 56–15–03, which had been issued by GM on October 24, 1995. The Trade Service Bulletin addressed a potential problem with the door hinges on Chevrolet vans built between 1986 and 1995, and stated:

"SUBJECT:

"Doors are hard to open (install new door hinge assemblies with teflon coated bushings, front, side cargo, or back cargo swing out doors)[.]

"* * *

"CONDITION:

"Owners may report one or more doors are difficult to open and/or close due to binding. This condition is noticed either while trying to swing the door out, or trying to close the door, or trying to close the door in its latched position.

"CAUSE:

"Metal to Metal interaction between the door hinge pin and bronze hinge pin bushing. Metal to metal reaction may allow corrosion, or environmental contaminates [sic] may dry out hinge pin lubricants.

"CORRECTION:

"Improved door hinges have been developed for all swing out door assemblies. The front, side cargo, and back cargo door hinges now have a teflon coated hinge pin bushing that allows the doors to swing with less resistance. Install new door hinges if the above condition exists. It may not be necessary to remove all hinges. Repair only the hinge/hinges that are binding."

On November 20, 1997, the Atkinses filed a complaint against GM, alleging that the cargo door hinges were defective in manufacture or construction, in design or formulation, due to inadequate warnings, or because they did not conform to representations made by GM. Mrs. Atkins sought recovery for the injuries she allegedly sustained as a result of the defective door hinge, which included a deep soft-tissue contusion of the abductor muscles of the right hip, and trochanteric bursitis. Mr. Atkins brought a loss of consortium claim.

In August, 1998, GM moved for summary judgment, asserting that under Ohio law, a plaintiff who brings a products liability claim pertaining to the allegedly defective manufacture or design of automobiles or automobile component parts is required to provide expert testimony in order to establish the elements of the claim. After noting that the trial court had imposed a March 18, 1998 deadline for the Atkinses to disclose all expert witnesses who would testify on their behalf, GM pointed out that the Atkinses had failed to identify any expert witness who would provide testimony concerning the existence of a manufacturing or design defect. Consequently, GM asserted, the Atkinses could not establish all of the elements of a products liability claim, because they could not prove any specific aspects of the door hinges that were defective in manufacture or design, nor could they prove that the hinges were defective when they left GM's hands. Thus, GM claimed, it was entitled to summary judgment as a matter of law.

In their memorandum contra to defendant's motion for summary judgment, the Atkinses admitted that they would not offer any expert testimony to establish that the side cargo door hinges were defective. The Atkinses argued, among other things, that they were not required to present expert testimony in this case because the side cargo door hinges were not complex. The Atkinses attached to their memorandum contra the affidavits of Mrs. Atkins and Joseph Anderson, the

service technician at Smedley's Chevyland, who replaced the allegedly defective hinges on the cargo doors of the Atkinses' van. Attached to Mrs. Atkins's affidavit was a copy of the trade service bulletin that the Atkinses had received from Joe Johnson Chevrolet. The Atkinses contended that this evidentiary material demonstrated that there were triable issues of fact regarding their products liability claim.

The trial court granted GM's motion for summary judgment. After noting that the hinges "are comprised of various component parts, including bushings, bosses, pins, and other structural pieces," the trial court found that the cargo door hinges "can be exceedingly complex." The trial court therefore concluded that "proving manufacturing defects or design defects of the nature involved in this case requires expert testimony[,]" and because the Atkinses were not going to offer any, GM was entitled to judgment as a matter of law.

The Atkinses appeal from the summary judgment rendered in GM's favor.

## II

The Atkinses' sole assignment of error states:

"The trial court erred to the prejudice of plaintiffs–appellants in granting defendant–appellee's motion for summary judgment."

The Atkinses argue that the trial court erred by finding that the cargo door hinges on their van were "exceedingly complex," and that, therefore, expert testimony was required in order to establish the elements of their products liability action. The Atkinses assert, among other things, that expert testimony is not required in this case because the hinges are not complex, and the affidavits of Mrs. Atkins and Anderson, along with the trade service bulletin attached to Mrs. Atkins' affidavit, were sufficient to create triable issues of fact with regard to the material elements of a products liability claim.

A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, which is adverse to the nonmoving party, who is entitled to have the evidence viewed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

Initially, the Atkinses alleged in their complaint that the side cargo door hinges were defective in manufacture or design, defective due to inadequate warning, or defective because the hinges failed to conform to a representation made by GM. However, on appeal, the Atkinses seek reversal of summary judgment only on their manufacturing and design defect claims.

A product is defective in manufacture or construction if, when it leaves the control of its manufacturer, it deviates in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. R.C. 2307.74. A product may be defective in manufacture or construction even if its manufacturer has exercised all possible care in its manufacture or construction. *Id.*

■ Here, the Atkinses have never claimed that the hinges deviate in any material way from GM's design specifications, formula, or performance standards, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. Instead, the Atkinses have always maintained that the hinges on their van were similar to the ones placed on other vans manufactured by GM from 1986–1995. The Atkinses' theory of the case centers on the improved hinge design mentioned in the trade service bulletin. Thus, it is apparent from the record that the Atkinses' claim is one for a design defect rather than for a manufacturing defect. Accordingly, the trial court's granting of summary judgment to GM with respect to the Atkinses' manufacturing defect claim will be affirmed.

■ In order to establish the elements of a design defect claim, a plaintiff must show that (1) there was a defect in the product manufactured and sold by the defendant, (2) the defect existed at the time the product left the defendant's control, and (3) the defect was the direct and proximate cause of the plaintiff's injuries or losses. *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 5–6, 523 N.E.2d 489, 493.

■ For products designed prior to January 27, 1997, like the Atkinses' van, the first element of a design defect claim—the existence of a product defect—may be established by showing that (1) when the product left its manufacturer's control, the foreseeable risks associated with its design or formulation exceeded the benefits associated with that design or formulation ("risk-benefit standard"), *or* (2) the product is more dangerous than an ordinary consumer would expect when using it in an intended and reasonably foreseeable manner ("consumer-expectation standard"). Former R.C. 2307.75(A).[1] Although the Atkinses have never expressly stated whether they are raising a risk-benefit claim or a consumer-expectation claim, it is apparent they are raising the latter type of claim, given their reliance on our decision in *Porter v. Gibson Greetings, Inc.*

---

1. The current version of R.C. 2307.75(A), which applies to products designed or formulated on or after January 27, 1997, deletes the consumer-expectation standard.

(Dec. 12, 1997), Montgomery App. No. 16575, unreported, 1997 WL 761851, which involved a consumer-expectation claim.

 "[U]nder the consumer-expectation standard, evidence of unsafe, unexpected product performance is sufficient to infer the existence of a product defect." *State Farm Fire & Cas. Co.,* at 7, 523 N.E.2d at 494–495. Furthermore, the question of what an ordinary consumer expects in terms of the risks posed by the product is generally one for the trier of fact. *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.* (1995), 107 Ohio App.3d 218, 225, 668 N.E.2d 529, 533–534.

 Here, Mrs. Atkins testified in her affidavit that the side cargo door "froze" when she tried to close it, requiring her to exert a great amount of force to close it. When she did, the door suddenly released, striking her and causing her injury. The trade service bulletin from GM stated that this sticking or "binding" problem with the cargo doors on their vans was caused either by the "[m]etal to metal interaction between the door hinge pin and bronze hinge pin bushing[,]" which "may allow corrosion," or by "environmental contaminates [*sic* ] [that] may dry out hinge pin lubricants." The trade service bulletin also indicated that there was a relatively simple solution to this problem, namely, the use of "a teflon coated hinge pin bushing that allows the doors to swing with this less resistance." This evidence would have allowed a reasonable trier of fact to conclude that the side cargo door hinges were defective. Thus, the Atkinses presented sufficient evidence to prove the first element of their design defect claim.

 The second element of a design defect claim—that the defect existed at the time the product left its manufacturer's control—can be inferred from a showing that there has been no "substantial change in the condition in which the product was sold." *State Farm Fire & Cas. Co., supra.* This can be established by showing that the product was not tampered with. *McDonald v. Ford Motor Co.* (1975), 42 Ohio St.2d 8, 11, 71 O.O.2d 4, 6, 326 N.E.2d 252, 254.

Here, Mrs. Atkins testified in her affidavit that the hinges on the side cargo door had not been repaired or modified between the time of the van's purchase and the time of the injury. This evidence was sufficient to establish a triable issue of fact regarding whether the design defect was present when the hinges left GM's control.

 Finally, in order to establish the third element of a design defect claim, causation, a plaintiff must prove, by a preponderance of the evidence, that some aspect of the challenged design rendered the product's performance less safe than the ordinary consumer would expect, resulting in injury. *State Farm Fire & Cas. Co., supra.*

Here, the GM trade service bulletin stated that the "binding" problem was caused by the metal-to-metal interaction between the door hinge pin and the bronze hinge pin bushing, or environmental contaminants drying out the hinge pin lubricants. The trade service bulletin further stated that the problem could be alleviated with a relatively simple solution: replacing the existing door hinges with improved door hinges that "now have a teflon coated hinge pin bushing [2] that allows the doors to swing with less resistance." Mrs. Atkins's affidavit testimony indicated that she was having the kind of problem with the side cargo door to her van that was outlined in the trade service bulletin. A reasonable juror could have concluded from the evidentiary material presented by the Atkinses that this problem was caused by either the metal-to-metal interaction between the door hinge pin and the hinge pin bushing, or by environmental contaminants, that the problem would not have occurred if GM had simply used Teflon-coated hinge pin bushings, and that Mrs. Atkins was injured as a result of this defectively designed door hinge. Thus, the Atkinses presented evidence relating some aspect of the challenged design to the injury, which was sufficient to create a triable issue of fact with regard to the causation element of a design defect claim.

In support of its contention that the Atkinses needed expert testimony in order to establish the elements of their design defect claim, GM cites *Dent v. Ford Motor Co.* (1992), 83 Ohio App.3d 283, 614 N.E.2d 1074, and *Bade v. Gen. Motors Corp.* (Dec. 20, 1991), Geauga App. No. 90–G–1599, unreported, 1991 WL 274499. However, both of these cases are distinguishable from the one before us; in those cases, the plaintiff submitted neither expert testimony nor any other evidence, aside from her own conclusory assertions, to prove the existence of a product defect. That is not the case here, given the Atkinses' submission of the trade service bulletin issued by GM. While it will often be necessary for a plaintiff bringing a design defect claim to present expert testimony in support of that claim, expert testimony is not always required to prove the material elements of a design defect claim. See *Porter, supra.* In some cases, circumstantial evidence alone, without expert testimony, will suffice to document the existence of a design defect. *Grover Hill Grain Co. v. Baughman–Oster, Inc.* (C.A.6, 1984), 728 F.2d 784, 794. In the case before us, neither the product nor its allegedly defective aspect is so complex as to require expert testimony as a matter of law.

Finally, GM challenges the evidentiary materials submitted by the Atkinses in support of their memorandum contra to defendant's motion for summary judgment, arguing that the evidence contains hearsay, lacks proper foundation, and is unauthenticated. We find these arguments unpersuasive.

---

2. A "bushing" is defined as a "removable cylindrical lining for an opening (as of a mechanical part) used to limit the size of the opening, resist abrasion, or serve as a guide." Merriam Webster's Collegiate Dictionary (10 Ed.1997), 154.

Mrs. Atkins's affidavit does contain some hearsay. For instance, she states in one paragraph that someone at Smedley's Chevyland told her and Mr. Atkins that GM had been having problems with the hinges on its vans. Additionally, Mrs. Atkins's claim that the "[Trade Service Bulletin] stated that the door hinges on Chevrolet vans built between 1986–1995 * * * were defective and required replacement" is technically inaccurate. However, when these portions are excluded from consideration, it does not affect the result of this case. Furthermore, contrary to GM's assertions, Anderson, a service technician for Smedley's Chevyland, was qualified to testify in his affidavit about the meaning of the GM trade service bulletin.

▉ Finally, the Atkinses presented sufficient facts to authenticate the trade service bulletin. The requirement of authentication or identification is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Evid.R. 901(A). Mrs. Atkins stated in her affidavit that she was given trade service bulletin No. 56–15–03 by an unidentified person at Joe Johnson Chevrolet. Anderson stated in his affidavit that the hinges he removed from the Atkinses' van were the subject of the GM Service Bulletin No. 56–15–03. The final sentence of the trade service bulletin states, "Copyright 1995 General Motors Corporation. All Rights Reserved." The appearance, contents, and substance of the trade service bulletin, taken in conjunction with the circumstances under which the Atkinses obtained it, establish the document's authenticity. Evid.R. 901(B)(4).

In light of the foregoing, the Atkinses' assignment of error is sustained to the extent indicated.

## III

The Atkins's assignment of error having been sustained to the extent indicated, the judgment of the trial court rendered against the Atkinses upon their manufacturing defect claim is *affirmed,* the judgment rendered against the Atkinses upon their design defect claim is *reversed,* and this cause is *remanded* for further proceedings consistent with this opinion.

*Judgment accordingly.*

BROGAN and WOLFF, JJ., concur.