OPINION
Plaintiff-appellant, William M. Caserta, appeals from the decision of the Franklin County Court of Common Pleas, which granted a directed verdict in favor of defendant-appellee, Holland Ladder Manufacturing Co.
Toward the end of 1991, appellant purchased a ladder manufactured by appellee. Appellant claims that, in April 1992, he sustained injuries after the ladder collapsed while he was on it to repair fascia boards on his roof. Thereafter, appellant filed a products liability claim against appellee, and asserts that the ladder manufactured by appellee collapsed because it was defective in design. The matter was tried to a jury on March 1, 1999. At the close of appellant's case, the trial court granted a directed verdict against appellant.
Appellant appeals, raising one assignment of error:
 The trial court erred in directing a verdict against the plaintiff since it did not follow the mandates of Civ.R. 50(A)(4), was in error as to the evidence before it and required the Plaintiff/Appellant to bear the burden of proof on the Defendant/Appellee's affirmative defense of modification, alteration, and abuse of product.
Civ.R. 50(A)(4) governs the standard for directed verdicts and provides that:
 * * * When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
When deciding on motions for a directed verdict, the trial court is not permitted to weigh the evidence or the credibility of witnesses but, rather, must determine if there is substantial probative evidence to support the plaintiff's claims.Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285. If the trial court concludes that reasonable minds could come to differing conclusions, it must overrule the motion and submit the issue to the trier of fact. Jaworowski v. Med. RadiationConsultants (1991), 71 Ohio App.3d 320, 333. The directed verdict standard is similar to the summary judgment standard. Grau v.Kleinschmidt (1987), 31 Ohio St.3d 84, 91. In essence, "`the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id., quoting Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 251-252. Thus, we may rely on cases involving both summary judgment and directed verdict motions when reviewing this case. See Keister v. Park Centre Lanes (1981), 3 Ohio App.3d 19,21 (recognizing that the pretrial decision the trial court must make when determining a summary judgment motion is comparable to that made upon a motion for directed verdict at the conclusion of the trial testimony). Our review of the trial court's ruling on a motion for a directed verdict is de novo. McConnell v. HuntSports Ent. (1999), 132 Ohio App.3d 657, 668-687.
In this case, the trial court granted a directed verdict against appellant because it concluded that the jury would have to speculate as to whether the ladder contained a defect and as to whether the defect existed when it left the manufacturer's control. However, construing the evidence in favor of appellant, we conclude that appellant has provided sufficient evidence to allow the jury to deliberate on the product's liability claim.
Appellant is utilizing the "consumer expectation" standard to assert that the ladder manufactured by appellee had a design defect. Under the "consumer expectation" standard, a design defect is established if the product is found to be more dangerous than an ordinary consumer would expect when using it in an intended and reasonably foreseeable manner. R.C. 2307.75(A). Evidence of unsafe, unexpected product performance is sufficient to infer the existence of a product defect. State Farm Fire Cas. Co. v. Chrysler Corp. (1998), 37 Ohio St.3d 1, 7; Atkins v.Gen. Motors Corp. (1999), 132 Ohio App.3d 556, 563.
A ladder has been recognized as a simple device without any complex features or designs. See McGill v. The Cleveland South-Western Traction Co. (1908), 79 Ohio St. 203. The "consumer expectation" standard seems appropriate for cases involving products of simple design. Cf. Knitz v. Minster Machine Co.
(1982), 69 Ohio St.2d 460, 465 (analyzing situations amenable to the "consumer expectation" standard). For example, the First District Court of Appeals of Ohio examined a "consumer expectation" case involving coffee in Nadel v. Burger King Corp.
(1997), 119 Ohio App.3d 578, 587. In Nadel, a mother sued a fast food restaurant on behalf of her child after the child suffered burns when hot coffee purchased from the restaurant spilled on the child. Id. at 583. The plaintiff claimed that the coffee contained a design defect because it was excessively hot. Id. at 587. In support of her claim, the plaintiff presented evidence that the coffee was served at one hundred seventy-five degrees and that the child received second-degree burns when the coffee was spilled on him. Id. at 587. The trial court granted summary judgment in favor of the defendant, Burger King Corp. Id. at 584. However, the appellate court reversed the summary judgment decision as to the design defect claim because it concluded that "the fact that the coffee caused second-degree burns is sufficient by itself to raise a factual issue whether the coffee was unreasonably hot, and, therefore, it is presently sufficient to defeat a motion for summary judgment." Id. at 588.
Additionally, in Colboch v. Uniroyal Tire Co., Inc.
(1996), 108 Ohio App.3d 448, 456, the Eighth District Court of Appeals of Ohio reviewed a case where a mechanic sued a tire manufacturer after sustaining injuries from a tire that exploded while he was mounting it to a truck. Id. at 451. The plaintiff produced evidence that the tire exploded at a low level of air pressure. Id. at 456. The plaintiff asked the trial court to instruct the jury on the "consumer expectation" standard. Id. at 454. The trial court decided not to give the instruction and the jury returned a verdict for the defendant. Id. The appellate court concluded that the trial court erred in not giving the "consumer expectation" instruction to the jury. Id. at 456. The court stated:
 * * * [P]laintiff had every reason to believe that the tire would not explode at a low level of air pressure. Because the instructions on the tire stated that it was to be inflated to a level of thirty-five p.s.i., no ordinary user would expect an explosion to occur at pressure levels around thirty-five p.s.i. The plaintiff presented the testimony of two witnesses and an expert who stated that the tire exploded near or below thirty-five p.s.i. Based on this evidence alone, reasonable minds could reach the conclusion that the tire was more dangerous than a consumer would expect. * * *
As well, in Porter v. Gibson Greetings, Inc. v. TilcoInternational, Inc. (Dec. 12, 1997), Montgomery App. No. 16575, unreported, the Second District Court of Appeals of Ohio examined a case where a plaintiff sued a balloon manufacturer after sustaining injuries when a balloon burst while she was inflating it. The trial court granted summary judgment in favor of the manufacturer because it found that the plaintiff did not produce sufficient evidence on her product's liability claim. The appellate court reversed the trial court's decision by concluding, in pertinent part, that the plaintiff's testimony that the balloon burst when only half inflated is sufficient to raise an issue of fact on the issue of a design defect claim under the "consumer expectation" standard.
Here, appellant testified that, in April 1992, he used the ladder manufactured by appellee to perform work on the fascia boards of his roof. Appellant testified that he did not abuse the ladder prior to this time and that it had been used only for normal household work since he purchased it in late 1991. As well, appellant indicated that the ladder was placed on firm ground and was stable while in use. Moreover, appellant testified that the weather was sunny and warm. He next testified that, after he climbed up the ladder to perform work on the fascia boards, the ladder made a "pop-like small sound" and "just seemed to explode." Appellant further indicated that the "back brace started popping and started twisting to the left." Subsequently, according to appellant, the ladder twisted and his left leg slipped between the ladder as it fell to the ground. We conclude that the above testimony establishes an issue of the ladder's unsafe and unexpected product performance and, therefore, establishes a claim that the ladder contained a design defect.
We acknowledge appellee's contention that the "consumer expectation" standard has not been established because there could have been other possible reasons for the ladder to collapse. While appellee may raise such contentions as defenses at trial, the contentions do not mandate a directed verdict against appellant. As noted above, under the "consumer expectation" standard, appellant was only required to provide sufficient evidence that the ladder failed to perform in a safe and expected manner.
We further conclude that the trial court erred in finding that the jury would have to speculate on the issue of whether the design defect was present in the ladder when it left appellee's control. A trier of fact can infer that a defect existed in a product at the time it left the manufacturer's control upon a showing that there has been no "substantial change in which the product was sold." State Farm Fire Cas. Co., at 7. A plaintiff can make such a showing upon demonstrating that the product was not tampered with. McDonald v. Ford Motor Co. (1975),42 Ohio St.2d 8, 11; Atkins, at 563.
In this case, appellant testified that, when he bought the ladder, he had no reason to believe that the ladder had been altered from the time it left the manufacturer. He further testified that the ladder was not used very much and was used only for normal household work. As well, appellant testified that he did not abuse the ladder at any time prior to the date it collapsed. Accordingly, construing the testimony of appellant in his favor, we conclude that this testimony by appellant is sufficient to establish an issue for the jury to determine whether the design defect was present in the ladder when it left appellee's control.
Accordingly, we conclude that the trial court erred in granting a directed verdict against appellant. Therefore, appellant's assignment of error is sustained and the judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.
 __________________ KENNEDY, J.
TYACK, J., concurs, LAZARUS, J., dissents.