[Cite as *Adkins v. Yamaha Motor Corp., U.S.A.*, 2014-Ohio-3747.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| BILLY M. ADKINS, | : | |
| Plaintiff-Appellant, | : | Case No. 14CA2 |
| vs. | : | |
| YAMAHA MOTOR CORPORATION, U.S.A., | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellee. | : | |

_____

APPEARANCES:

COUNSEL FOR APPELLANT: Robert C. Delawder, P.O. Box 297, Ironton, Ohio 45638

COUNSEL FOR APPELLEE: Terrance M. Miller and Elizabeth L. Moyo, Porter Wright Morris & Arthur LLP, 41 South High Street, Columbus, Ohio 43215

_____

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 8-25-14
ABELE, P.J.

{¶ 1} This is an appeal from a Lawrence County Common Pleas Court summary judgment in favor of Yamaha Motor Corporation, U.S.A., defendant below and appellee herein.

Billy M. Adkins, plaintiff below and appellant herein, assigns the following error for review:

> "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WHERE THERE EXISTED GENUINE ISSUES OF MATERIAL FACT WITHIN THE REALM OF KNOWLEDGE OF A LAYPERSON."

{¶ 2}   On December 1, 2007, appellant suffered injuries while riding as a passenger on a Yamaha Rhino, an off-road recreational utility vehicle.   According to appellant, the vehicle simply rolled over as his friend drove it.

{¶ 3}   Appellant subsequently filed a complaint against appellee and asserted both a negligent design and a product liability claim.   Appellant contended that the vehicle was defective because "it unexpectedly rolled over while being properly driven."   Appellant further alleged that before his injury, "numerous lawsuits" involving the vehicle had been "filed [against appellee] around the country."

{¶ 4}   On October 8, 2013, appellee requested summary judgment and argued that no genuine issues of material fact remained whether the vehicle contained a defect or whether any alleged defect caused appellant's injuries.   Appellee observed that appellant did not present an expert witness to support his defective product claim and that the evidence otherwise in the record failed to support appellant's claim.

{¶ 5}   Appellant responded that he is not required to present expert testimony to show that the product was defective.   Appellant argued that appellee had issued a recall involving the vehicle and that this notice is sufficient to prove that the vehicle contained a defect.   Appellant asserted:

{¶ 6}   "[T]here are genuine issues of material fact for the jury to decide in this case which do not require [appellant] to put on expert testimony as [appellant] should be allowed to introduce evidence at trial that [appellee] issued a recall regarding its Rhino off-road vehicle * * * as a result of multiple 'roll-over' type accidents.   As such, the owner of the Rhino that [appellant] was riding in at the time he was injured should be competent to testify concerning

how he was operating the Rhino, the date and nature of the recall notice he received from

[appellee], as well as the date and what repairs were done to his Rhino."

{¶ 7}   To support his argument, appellant submitted his affidavit.   In it, he stated:

"After discussion with my attorney regarding the pros and cons of not retaining expert witnesses * * * I have made the informed and voluntary decision not to retain expert witnesses in this case as I believe the same are not required and are unnecessary to proceed to trial."

{¶ 8}   Appellant additionally stated that he intended to call the vehicle's owner as a

witness and that the owner would testify that after the accident, he had the vehicle repaired "due

to a recall notice of a defective condition issued by [appellee]."   Appellant also stated that he

intended to call a representative of the business that performed the repairs to testify as to the date,

nature, and extent of the repairs.   Appellant did not, however, present any actual evidence from

the vehicle owner or the repair shop.   Also, he did not present any evidence to document that

appellee had indeed issued a recall notice to the vehicle's owner.

{¶ 9}   On December 18, 2013, the trial court entered summary judgment in appellee's

favor.   The court determined that without expert testimony, appellant could not "succeed as a

matter of law on his product defect claim."   This appeal followed.

{¶ 10}  In his sole assignment of error, appellant argues that the trial court erred by

awarding appellee summary judgment.   In particular, appellant contends that the trial court

wrongly determined that appellant's failure to present an expert witness is fatal to his product

liability design defect claim.   Appellant asserts that expert testimony is unnecessary because the

alleged defect–the vehicle's propensity to roll over–is not a complex or technical matter that a

layperson would be unable to understand.   Appellant asserts that "[t]he concept of widening the

wheelbase of a vehicle to reduce the high likelihood of a rollover seems quite simple rather than highly complicated." Appellant further argues that the following facts show that the vehicle was defectively designed: (1) appellee "entered into a 'voluntary repair program' with the U.S. Consumer Product Safety Commission;" and (2) appellee "agreed to cease further sales of the vehicles and advised owners to cease operation of the vehicles [until] corrective repairs could be made." Appellant asserts that "the [corrective] repairs involved widening the wheel base of the vehicle and removing a rear sway bar to fix the roll-over issue."

{¶ 11} Appellee asserts that the trial court properly determined that appellant's failure to present expert testimony is fatal to his design defect claim. Appellee argues that "the design of a motor vehicle is a technical concept that must be explained by an expert because it is beyond the comprehension of a lay person." Appellee contends that the overall stability of a vehicle "is not determined solely by the width of the wheelbase," and that appellant needed to present expert testimony "to show whether a change in the width of the wheelbase would have had any impact on Appellant's accident and alleged injuries."

{¶ 12} Appellee additionally contends that appellant cannot rely upon the voluntary repair program to establish that genuine issues of material fact remain regarding his product liability claim. Appellee also points out that appellant did not submit any admissible evidence during the trial court proceedings regarding the voluntary repair program.

A

STANDARD OF REVIEW

{¶ 13} Appellate courts conduct a de novo review of trial court summary judgment decisions. E.g., Troyer v. Janis, 132 Ohio St.3d 229, 2012–Ohio–2406, 971 N.E.2d 862, ¶6; Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. E.g., Brown v. Scioto Bd. of Commrs., 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); Morehead v. Conley, 75 Ohio App.3d 409, 411–12, 599 N.E.2d 786 (1991). To determine whether a trial court properly granted a summary judgment motion, an appellate court must review the Civ.R. 56 summary judgment standard, as well as the applicable law. Civ. R. 56(C) provides in relevant part:

> * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 14} Thus, pursuant to Civ.R. 56, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. E.g., Smith v. McBride, 130 Ohio St.3d 51, 2011–Ohio–4674, 955 N.E.2d 954, ¶12; New Destiny Treatment Ctr., Inc. v. Wheeler, 129 Ohio St.3d 39,

2011–Ohio–2266, 950 N.E.2d 157, ¶24; <u>Vahila v. Hall</u>, 77 Ohio St.3d 421, 429–30, 674 N.E.2d 1164 (1997).

{¶ 15} Under Civ.R. 56, the moving party bears the initial burden to inform the trial court of the basis for the motion and to identify those portions of the record that demonstrate the absence of a material fact. <u>Vahila</u>, <u>supra</u>; <u>Dresher v. Burt</u>, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). The moving party cannot discharge its initial burden with a conclusory assertion that the nonmoving party has no evidence to prove its case. <u>Kulch v. Structural Fibers, Inc.</u>, 78 Ohio St.3d 134, 147, 677 N.E.2d 308 (1997); <u>Dresher</u>, <u>supra</u>. Rather, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support the nomoving party's claims. Civ.R. 56(C); <u>Dresher</u>, <u>supra</u>.

{¶ 16} "[U]nless a movant meets its initial burden of establishing that the nonmovant has either a complete lack of evidence or has an insufficient showing of evidence to establish the existence of an essential element of its case upon which the nonmovant will have the burden of proof at trial, a trial court shall not grant a summary judgment." <u>Pennsylvania Lumbermans Ins. Corp. V. Landmark Elec., Inc.</u>, 110 Ohio App.3d 732, 742, 675 N.E.2d 65 (2nd Dist. 1996). Once the moving party satisfies its burden, the nomoving party bears a corresponding duty to set forth specific facts to show that a genuine issue exists. Civ.R. 56(E); <u>Dresher</u>, <u>supra</u>.

{¶ 17} In responding to a summary judgment motion, the nonmoving party may not rest on "unsupported allegations in the pleadings." <u>Harless v. Willis Day Warehousing Co.</u>, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Instead, Civ.R. 56 requires the nonmoving party to

respond with competent evidence that demonstrates the existence of a genuine issue of material

fact.   Specifically, Civ.R. 56(E) provides:

> Supporting and opposing affidavits shall be based on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.   Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.   If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

Thus, "'resting on mere allegations against a motion for summary judgment and eschewing the

mandate of Civ.R. 56(E) is insufficient'" to defeat a properly supported summary judgment

motion.   Jackson v. Alert Fire & Safety Equip., Inc., 58 Ohio St.3d 48, 52, 567 N.E.2d 1027,

1032 (1991), quoting King v. K.R. Wilson Co., 8 Ohio St.3d 9, 11, 8 OBR 79, 80, 455 N.E.2d

1282, 1283 (1983).   Moreover, "conclusory affidavits that merely provide legal conclusions or

unsupported factual assertions are not proper under Civ. R. 56(E)" and are insufficient to

establish a genuine issue of material fact.   Moore v. Smith, 4th Dist. Washington No. 07CA61,

2008-Ohio-7004, ¶15 (citations omitted); Wertz v. Cooper, 4th Dist. Scioto No. 06CA3077,

2006–Ohio–6844, ¶13, citing and quoting Evans v. Jay Instrument & Specialty Co., 889 F.Supp.

302, 310 (S.D.Ohio 1995) ("'bald self-serving and conclusory allegations are insufficient to

withstand a motion for summary judgment'"); accord McCartney v. Oblates of St. Francis

deSales, 80 Ohio App.3d 345, 357-358, 609 N.E.2d 216 (6th Dist. 1992) (stating that a trial court

considering a summary judgment motion is not required to accept conclusory allegations that are

devoid of any evidence to create an issue of material fact).

{¶ 18} A nonmoving party need not try its case when defending against a summary judgment motion. A nonmoving party must, however, produce more than a scintilla of evidence to support its case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Carsey v. Alexander Cemetery, Inc., 4th Dist. Athens No. 00CA028, 2001-Ohio-2438. To hold otherwise "is, in extreme cases, to permit the jury to play with shadowy and elusive inferences which the logical mind rejects." Hamden Lodge No. 517, I.O.O.F. v. Ohio Fuel Gas Co., 127 Ohio St. 469, 482, 189 N.E. 246, 251 (1934). Thus, a nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993); accord Springfield Loc. Sch. Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emp., 106 Ohio App.3d 855, 863, 667 N.E.2d 458 (9th Dist. 1995). In other words, "[b]efore the judge is required to send the case to the jury, there should be in evidence something substantial from which a reasonable mind can draw a logical deduction." Hamden Lodge, 127 Ohio St. at 482. Moreover, "'[t]he non-moving party may not rely on isolated facts to support his claim. Indeed, he must show that the evidence as a whole substantiates his claim.'" Hamilton v. 312 Walnut Ltd. Partnership, 1st Dist. Hamilton No. C-960368 (Dec. 31, 1996), quoting Paul v. Uniroyal Plastics Co., Inc., 62 Ohio App.3d 277, 282, 575 N.E.2d 484, 487 (6th Dist. 1988). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson, 477 U.S. at 251-252.

{¶ 19} In the case at bar, we agree with the trial court that appellee satisfied its burden of showing the absence of a material fact regarding appellant's design defect claim. As we explain

below, the evidence appellant submitted in opposition fails to demonstrate more than some

metaphysical doubt as to the material facts.

B

DESIGN DEFECT PRODUCT LIABILITY CLAIM

{¶ 20} R.C. 2307.73(A) subjects a manufacturer to liability for compensatory damages

based on a design defect product liability claim only if the claimant establishes, by a

preponderance of the evidence, that: (1) the product "was defective in design or formulation as

described in [R.C.] 2307.75;" (2) "[a] defective aspect of the manufacturer's product * * * was a

proximate cause of harm for which the claimant seeks to recover compensatory damages;" and

(3) "[t]he manufacturer designed, formulated, produced, constructed, created, assembled, or

rebuilt the actual product that was the cause of harm for which the claimant seeks to recover

compensatory damages."   In the case at bar, the parties dispute whether genuine issues of

material fact remain regarding whether the vehicle was defective in design and whether a

defective aspect of the vehicle proximately caused appellant's injuries.

1

Defective in Design

{¶ 21} Appellant contends that the vehicle was defective in design due to its roll-over

propensity, allegedly due to its narrow wheelbase.   R.C. 2307.75(A) states that a product is

defective in design "if, at the time it left the control of its manufacturer, the foreseeable risks

associated with its design or formulation * * * exceeded the benefits association with that design

or formulation."  R.C. 2307.75(B) sets forth certain factors used to ascertain the foreseeable

risks[1] associated with the design or formulation of a product:

> (1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;
> (2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;
> (3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;
> (4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer;
> (5) The extent to which that design or formulation is more dangerous than a re[a]sonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

**{¶ 22}** R.C. 2307.75(C) outlines the factors used to evaluate the benefits associated with

the design or formulation of a product:

> (1) The intended or actual utility of the product, including any performance or safety advantages association with that design or formulation;
> (2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;
> (3) The nature and magnitude of any foreseeable risks associated with an alternative design or formulation.

---

[1] R.C. 2307.71(A)(6) defines "foreseeable risk" as "a risk of harm that satisfies both of the following:"

> (a) It is associated with an intended or reasonably foreseeable use, modification, or alteration of a product in question.
> (b) It is a risk that the manufacturer in question should recognize while exercising both of the following:
> (I) The attention, perception, memory, knowledge, and intelligence that a reasonable manufacturer should possess;
> (ii) Any superior attention, perception, memory, knowledge, or intelligence that the manufacturer in question possesses.

{¶ 23} A product is not defective in design, however, if the harm resulted from "an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community"; or (2) "if, at the time the product left the control of its manufacturer, a practical and technically feasible alternative design or formulation was not available that would have prevented the harm for which the claimant seeks to recover compensatory damages without substantially impairing the usefulness or intended purpose of the product."   R.C. 2307.75(E) and (F).

2

Expert Testimony

{¶ 24} Although products liability plaintiffs often present expert testimony to support a design defect claim, a products liability plaintiff need not always present expert testimony to support a design defect claim.   Aldridge v. Reckart Equip. Co., 4th Dist. Gallia No. 04CA17, 2006-Ohio-4964, ¶57 (citations omitted).   However, expert testimony is required when the subject matter "involves a question of scientific inquiry which is not within the knowledge of lay witnesses or members of the jury."   Stacey v. Carnegie-Illinois Steel Corp., 156 Ohio St. 205, 210, 101 N.E.2d 897 (1951).   Thus, a plaintiff must present expert testimony when "the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill."   Jones v. Hawkes Hosp. Of Mt. Carmel, 175 Ohio St. 503, 196 N.E.2d 592 (1964), paragraph one of the syllabus.   Conversely, expert testimony is not required when the

subject matter is "well within the comprehension of laypersons and require[s] only common knowledge and experience to understand [it]." Longbottom v. Mercy Hosp. Clermont, — Ohio St.3d —, 2012-Ohio-2148, 971 N.E.2d 379, ¶32. Consequently, when a products liability claim "involves a simple device without complex features or designs, circumstantial evidence may be sufficient to establish that a defect existed."[2] Aldridge at ¶57.

{¶ 25} In Aldridge, for instance, we determined that expert testimony was unnecessary to prove the elements of a design defect claim. In Aldridge, the plaintiff suffered injuries when his hand and arm were pulled into an unguarded conveyor system. In concluding that expert testimony was not necessary to prove that the conveyor system was defectively designed, we explained:

> "[T]he conveyor belt and the lack of guarding at the point where Aldridge's injury occurred are not so complex as to be beyond the knowledge of a lay person so as to require expert testimony. We do not believe that the technical feasibility of adding a guard to an unguarded conveyor is beyond the grasp of the average lay person."

---

[2] We observe, however, that the authors of Ohio Personal Injury Practice suggest that a products liability plaintiff must present expert testimony when showing that an alternative design or formulation was available. The authors state:

> "Expert witnesses for the plaintiff must establish that there was a 'practical and technically feasible alternative design' that would have prevented the injury without reducing the 'usefulness or intended purpose' of the product. * * * *
> * * * The multiple experts for the plaintiff must show: (a) An alternate design exists, which is (b) 'practical and technically feasible,' * * * and that alternative (c) would not reduce the product's usefulness, (d) would not adversely affect the product's intended purpose, and (e) had the design alternative been used, the injury would not have occurred.
> * * * If the plaintiff's expert is rejected in whole or in substantial part, then the plaintiff's evidence is excluded and the case will be dismissed."

Id., Section 13:13 (2014 ed.) (Footnotes omitted).

Id. at ¶58.

{¶ 26} We also relied upon the Second District Court of Appeals' decision in Atkins v.

General Motors, 132 Ohio App.3d 556, 564, 725 N.E.2d 727 (2nd Dist. 1999) and explained:

> "In Atkins, the plaintiffs alleged that their van's cargo door hinges were defective
> in manufacture or construction, design or formulation, due to inadequate warning,
> and because they did not conform to the defendant's representations.   The trial
> court awarded the defendant summary judgment when the plaintiffs failed to
> present expert testimony to establish their products liability claim.   The appellate
> court disagreed that expert testimony is always necessary to prove a design defect
> claim:
> > 'While it will often be necessary for a plaintiff bringing a design defect
> claim to present expert testimony in support of that claim, expert testimony is not
> always required to prove the material elements of a design defect claim.   In some
> cases, circumstantial evidence alone, without expert testimony, will suffice to
> document the existence of a design defect.   In the case before us, neither the
> product nor its allegedly defective aspect is so complex as to require expert
> testimony as a matter of law.'
> 132 Ohio App.3d at 564 (citations omitted)."

Id. at ¶57.

{¶ 27} Similarly, in Porter v. Gibson Greetings, Inc., 2nd Dist. Montgomery No. 16575

(Dec. 12, 1997), the court determined that expert testimony was not necessary to prove a design

defect claim.   In Porter, the plaintiff's injuries resulted from a balloon malfunction.   In

explaining why expert testimony was unnecessary in a design defect case involving a balloon, the

court explained:   "[A] balloon is a much simpler device than an automobile.   The possible

causes of balloon malfunction are, we cannot doubt, less numerous than the possible causes of

automotive malfunction."

{¶ 28} In the case at bar, we recognize that the design of the Rhino may not be as highly

technical and complex as a standard automobile, but it certainly is more complex than a balloon

or an unguarded conveyor system.   The design of an off-road recreational vehicle is more akin to the design of an automobile.   We do not believe that the design of an off-road recreational vehicle and its stability is a matter within the common knowledge of a lay person.   See, generally, Clay v. Ford Motor Co., 215 F.3d 663, 668 (6th Cir. 2000) (recognizing as relevant plaintiff's expert's testimony regarding sport utility vehicle's stability index, rear stabilizer bar, and front suspension system in vehicle rollover design defect product liability action and noting that testimony regarding vehicle's stability index related to vehicle's propensity to roll over). Instead, we believe that the design of an off-road recreational vehicle and its stability ordinarily is a complex, technical matter.   Thus, a design defect claim involving an off-road recreational vehicle ordinarily requires expert testimony.

{¶ 29} We certainly recognize that laypersons may be somewhat familiar with vehicle rollover risks in general.   However, like the trial court, we do not believe that laypersons can adequately evaluate whether a rollover risk constitutes a design defect without the benefit of expert testimony or some other evidence to show that the vehicle in question rolled over due to a design defect.   See Gumnitsky v. Delta International Machinery Corp., 411 F.Supp.2d 756, 762 (N.D. Ohio 2005), quoting McGrath v. General Motors Corp., 26 Fed.Appx. 506, 511 (6th Cir.2002 (stating that when "a plaintiff has 'no expert analysis or other evidence demonstrating that some aspect of the design was defective, the claim is dismissed'").

{¶ 30} Appellant also asserts that appellee instituted a voluntary recall to fix the alleged defect and is involved in numerous lawsuits.   However, appellant offered no evidentiary materials during the trial court proceedings to support these assertions.   Instead, he offered conclusory allegations without any factual support.   Additionally, appellant did not present an

affidavit from either the vehicle's owner or the repair shop that performed the recall service.   We further observe that some authority exists to support the view that the mere issuance of a recall notice is insufficient to prove that a product was defective.   Migliori v. Merritt, 6th Dist. Lucas No. L-11-1136, 2012-Ohio-3614, ¶17.

{¶ 31} Furthermore, simply because the vehicle rolled over does not, standing alone, establish a design defect claim.   See State Farm Fire & Cas. Co. v. Chrysler Corp., 37 Ohio St.3d 1, 8, 523 N.E.2d 489, 496 (1988) (observing that simply because a vehicle caught fire does not mean that the vehicle was defective); accord Yanovich v. Zimmer Austin, Inc., 255 Fed.Appx. 957, 966 (6th Cir.2007) (holding that a product's failure to perform is not, by itself, evidence of a defect).   While a vehicle rollover may "'cr[y] out for explanation,' it is the plaintiffs' burden to respond with evidence which will permit a jury to go beyond speculation and render a judgment in accordance with law."   State Farm, 37 Ohio St.3d at 8.

{¶ 32} Therefore, because appellant did not respond to appellee's properly supported summary judgment motion with any evidentiary materials to demonstrate the existence of a material fact regarding his design defect claim, we believe that the trial court appropriately awarded appellee summary judgment.

{¶ 33} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's assignment of error and affirm the trial court's judgment.

                                                                            JUDGMENT AFFIRMED.

[Cite as *Adkins v. Yamaha Motor Corp., U.S.A.*, 2014-Ohio-3747.]
JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele
Presiding Judge

**<u>NOTICE TO COUNSEL</u>**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.