# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1821

_____

| | | |
|---|---|---|
| Nicole Mwesigwa; S.M., | * | |
| By and through Next Friend | * | |
| Nicole Mwesigwa; M.M., | * | |
| By and through Next Friend | * | |
| Nicole Mwesigwa, | * | |
| | * | |
| Plaintiffs - Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| State Farm Fire & Casualty Company,[1] | * | Eastern District of Missouri. |
| | * | |
| Intervenor - Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| DAP, Inc., | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: January 13, 2011
Filed: April 28, 2011

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

_____

[1]State Farm intervened in this lawsuit before the district court to assert its subrogation rights to any damages awarded.

Michael Mwesigwa died in an accident involving DAP Weldwood Gel Formula Contact Cement. His wife, Nicole Mwesigwa, sued DAP, Inc. on behalf of herself and the decedent's minor children, S.M. and M.M. (the appellants are referred to collectively as the "Mwesigwas"). The district court[2] granted summary judgment in favor of DAP, and the Mwesigwas appeal. We affirm.

I.

DAP Weldwood Gel Formula Contact Cement, a construction adhesive, exhibits warnings on the can and the lid. The lid instructs, "WARNING! FLAMMABLE! VAPORS HARMFUL AND MAY CAUSE FLASH FIRE" and "BEFORE USE TURN OFF MAIN GAS VALVE." The lid further instructs the user to keep the product away from heat, electrical sparks, and flame; to shut off pilot lights; to refrain from smoking; to prevent buildup of vapors by opening windows and doors; and to shut off stoves, heaters, and appliances. In addition, the lid depicts an open can with vapors emanating toward a cigarette labeled "smoking," a gas valve labeled "gas," a flame labeled "flame/heat," and electrical volts labeled "electricity/sparks." Each of the four pictures contain a bold red line crossed through the black-and-white image.

The can further includes "Precautionary measures for use, handling, storage and disposal":

Use in a well ventilated area. Provide fresh air such that chemical odors cannot be detected during use and while drying. Vapors are heavier than air and will collect in low areas. Check all low areas (basements, sumps, etc.) for vapor before entering. Vapor may ignite explosively. Keep away from heat, sparks, and flames. Do not smoke. Extinguish all

[2]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

flames and pilot lights. Turn off stoves, heaters, electric motors and other sources of ignition during use and until all vapor is gone. Keep container closed when not in use. Do not reuse the empty container. Do not use in areas where static electric sparks may be generated. Empty container may contain explosive vapors. Do not weld, cut or torch on or near this container. Store away from oxidizers and caustics. Wear gloves. Avoid skin contact. Wear eye protection with side shields.

The can also repeats the warnings on the lid: "DANGER! FLAMMABLE LIQUID AND VAPOR HARMFUL OR FATAL IF SWALLOWED," "VAPOR HARMFUL," "BEFORE USE TURN OFF MAIN GAS VALVE," "VAPORS CAN TRAVEL ALONG FLOOR TO ANY SOURCE OF HEAT, SPARK OR FLAME IN NEXT ROOM OR BASEMENT."

Michael Mwesigwa purchased a can of DAP Cement to use in installing new baseboards in his home. While Mwesigwa was carrying the closed can through his laundry room, he accidentally dropped it and spilled some of the DAP cement on the floor. When he attempted to clean up the spill by wiping up the adhesive, the vapors emitted from the DAP cement ignited and caused a flash fire. Mwesigwa suffered second- and third-degree burns to 80% of his body and ultimately died from his injuries after a two-month hospitalization.

The Mwesigwas sued DAP in federal court for: (1) wrongful death on the theories of negligence, strict liability, and failure to warn; (2) for negligent misrepresentation; and (3) for violations of the Consumer Product Safety Act. The district court granted summary judgment in favor of DAP, and the Mwesigwas appeal summary judgment on their wrongful-death, failure-to-warn claim.[3]

---

[3]The Mwesigwas initially challenged the adverse grant of summary judgment on all of their claims, but at oral argument counsel for the Mwesigwas expressly limited this appeal to their failure-to-warn claim.

II.

We review a district court's grant of summary judgment de novo. Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 518 (8th Cir. 2010). We will affirm the grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

DAP cement is a hazardous substance sold for household use. 15 U.S.C. § 1261(f)(1)(A)(v) (defining "hazardous substance" as one that is "flammable or combustible," among other qualifying characteristics). The Federal Hazardous Substances Act (FHSA) requires hazardous substances sold in interstate commerce and intended for household use to bear adequate cautionary labels. See 15 U.S.C. § 1261; Mattis v. Carlon Elec. Prods., 295 F.3d 856, 861-62 (8th Cir. 2002). A plaintiff may bring a failure-to-warn claim based on the theory that a product label failed to comply with the FHSA. Nat'l Bank of Commerce of El Dorado v. Kimberly-Clark Corp., 38 F.3d 988, 993 (8th Cir. 1994). A plaintiff cannot, however, bring a failure-to-warn claim based on a state-law theory that the product's label should have included particular warnings not required by the FHSA. Mattis, 295 F.3d at 861. The FHSA preempts any state cause of action that would impose a labeling requirement "different from the requirements in the FHSA or the regulations promulgated thereunder." Id. at 862. The Mwesigwas concede that if their arguments regarding the DAP cement label amount to a claim that the label should have included warnings beyond those required by the FHSA, the district court properly rejected the claim as

preempted.[4]  The burden is on the Mwesigwas to create a question of fact that the DAP cement label did not comply with the FHSA.[5]  Id.

The FHSA prohibits manufacturers from "introduc[ing] into interstate commerce . . . any misbranded hazardous substance."  15 U.S.C. § 1263(a).  A hazardous substance is "misbranded" if its packaging or labeling fails to bear a label warning of, among other things, "the principal hazard or hazards" and "precautionary measures describing the action to be followed or avoided."  15 U.S.C. § 1261(p)(1)(E)-(F).  A hazardous substance is also "misbranded" if its packaging or labeling fails to comply with applicable federal regulations.  15 U.S.C. § 1261(p).

---

[4]The Mwesigwas contend that the district court misconstrued their complaint as alleging additional labeling requirements rather than noncompliance because of the district court's statement that the Mwesigwas' "claim for failure to warn fails because they have not alleged that [DAP]'s label did not comply with the FHSA."  Although the district court incorrectly stated that the Mwesigwas failed to allege noncompliance with the FHSA, the court nevertheless applied the correct standard and analyzed whether the DAP cement warning label complied with the FHSA.

[5]To the extent the Mwesigwas argue that compliance with the FHSA is always a question of fact for the jury, we reject this argument.  The question of compliance with the FHSA may be a question of fact or a question of law depending on the circumstances of the case.  Compare Mattis v. Carlon Elec. Prods., 295 F.3d 856, 862-63 (8th Cir. 2002) (holding that a question of fact existed as to compliance when the label did not make clear that the inhalation of vapors, which caused the plaintiff's injury, was harmful), and Milanese v. Rust-Oleum Corp., 244 F.3d 104, 112 (2d Cir. 2001) (holding that a material issue of fact existed as to whether the danger of flash fire from vapors constitutes a primary hazard distinct from the flammability of the liquid product), with Moss v. Parks Corp., 985 F.2d 736, 741-42 (4th Cir. 1993) (holding that the question of compliance with the FHSA was a question of law because the label contained all federally mandated warnings), and Pa. Gen. Ins. Co. v. Landis, 96 F. Supp. 2d 408, 412 (D.N.J. 2000) (holding that the determination of FHSA requirements is a question of law).

First, the Mwesigwas contend that the label did not comply with the FHSA because it failed to warn of one of the principal hazards of DAP cement. Specifically, the Mwesigwas argue that the label should have included the risk of fire from an accidental spill of the DAP cement as a principal hazard separate from the product's general flammability. If the spill is handled in a particular manner, the Mwesigwas reason, the product becomes exponentially more dangerous, and thus the spill constitutes a separate principal hazard.

We conclude that the risk of fire from an accidental spilling of DAP cement is not a principal hazard that the FHSA requires the label to state affirmatively. The FHSA provides examples of "principal hazard," including "Flammable," "Combustible," "Vapor Harmful," "Causes Burns," and "Absorbed Through Skin." 15 U.S.C. § 1261(p)(1)(E). The Code of Federal Regulations further defines "principal hazard" as "the principal or primary hazard(s) associated with a hazardous substance," and provides examples such as "harmful or fatal if swallowed," "vapor harmful," "flammable," and "skin and eye irritant." 16 C.F.R. § 1500.121(a)(2)(vii).

Regardless of how the product is exposed to elements outside its container, the risk created is the potential for a fire. Absent ignition sources, the spilling or spreading of the product will not result in an ordinary or flash fire. Although an additional warning indicating the magnified risk of flash fire when the DAP cement is spread might reinforce the flammability warnings already provided, such warnings are not required by the FHSA. See Torres-Rios v. LPS Labs., Inc., 152 F.3d 11, 14-15 (1st Cir. 1998) (holding that the FHSA does not require a cleaning product label to warn of the magnified risk of flash fire when vapors are spread as a result of spraying the product); see also Milanese, 244 F.3d at 112 (comparing the product label at issue with the label previously required by the Consumer Product Safety Commission for extremely flammable contact adhesives in assessing compliance); 16 C.F.R. § 1500.133(b) (providing the "minimum cautionary labeling adequate" for extremely

flammable contact adhesives and omitting the magnified risk of flash fire from spreading).

Second, the Mwesigwas argue that the DAP contact cement label failed to exhibit adequate "precautionary measures describing the action to be followed or avoided" under 15 U.S.C. § 1261(p)(1)(F). Specifically, the Mwesigwas assert that the label should have informed the consumer that in the event of a spill, the product should not be wiped and spread but absorbed with an inert absorbent.

We conclude that the FHSA does not require the DAP cement label to warn consumers against spreading the product after a spill as a precautionary measure. Although the FHSA refers to "precautionary measures" generally, the Code of Federal Regulations makes clear that the "precautionary measures" required to be warned of on the product label are those necessary to avoid the principal hazard associated with the product. 15 U.S.C. § 1261(p)(1)(F); see also 16 C.F.R. § 1500.127(a). The Code of Federal Regulations provides that substances with multiple hazards should include an "affirmative statement of each such hazard" and the "precautionary measures describing the action to be followed or avoided *for each such hazard*." 16 C.F.R. § 1500.127(a) (emphasis added); Milanese, 244 F.3d at 111. When section 1261(p)(1)(F) of the FHSA is read together with section 1500.124(a) of the Code of Federal Regulations, it is clear that the "precautionary measures" a manufacturer must include on the label of a hazardous substance are those directed at minimizing or avoiding the principal hazard or hazards of the product.

Here, the DAP cement label instructs the consumer that in order to avoid the principal hazards of general flammability and flash fire, before the DAP cement is used, handled, stored, or disposed of, any potential source of ignition must be eliminated as a precautionary measure. Spreading the product after a spill is dangerous only if the consumer has not removed potential sources of ignition. Although an additional warning instructing the consumer to avoid spreading the

cement in the event of an accidental spill might bolster the precautionary measures already provided, the FHSA does not require the additional warning. The label complies with the FHSA because the principal hazard to be avoided is flammability, and the way to avoid that hazard is to remove all potential ignition sources.

## III.

Accordingly, we affirm the district court's grant of summary judgment in favor of DAP.

_____