In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3602

JUAN SUAREZ and BILLIE SUAREZ,

*Plaintiffs-Appellants*,

*v.*

W.M. BARR & COMPANY, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CV 4569 — **Matthew F. Kennelly**, *Judge.*

ARGUED APRIL 12, 2016 — DECIDED NOVEMBER 22, 2016

Before WOOD, *Chief Judge*, and FLAUM and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Juan Suarez used Goof Off, an extremely flammable product made by W.M. Barr, to remove paint from a basement floor. While doing so, a fire erupted in the basement and severely burned him. Juan and his wife sued Barr, alleging failure to warn and defective de-

sign under Illinois law. The Suarezes appeal the district judge's grant of summary judgment in Barr's favor.

We conclude that the district judge appropriately rejected the Suarezes' failure-to-warn claim. The warning label on the Goof Off can adequately identified the product's principal hazards, as well as the precautionary measures to be taken while using the product. However, we reverse and remand the district judge's rejection of the Suarezes' design defect claims under both strict liability and negligence. The Suarezes have adequately shown that the fire may have been caused by static sparks created when Juan agitated Goof Off with a brush as the warning label instructed. So a genuine factual issue exists as to whether an ordinary consumer would expect a fire to erupt under these circumstances, whether this risk outweighs the benefits associated with Goof Off, and whether Barr should have known that agitating Goof Off could have created static sparks sufficient for ignition.

## I.   BACKGROUND

### A.  Fire Erupts While Using Barr's Product

In April 2012, Juan Suarez (Juan) purchased a one-gallon can of Professional Strength Goof Off to help remove paint from the concrete basement floor of a building he owned. Goof Off is produced by Defendant W.M. Barr & Company, and is advertised as being effective at removing dried latex paint and other materials from various surfaces such as metal, glass, brick, wood, and concrete. The primary active ingredient in Goof Off is acetone, which is extremely flammable and evaporates quickly at room temperature. The can

Juan purchased contained various warnings in both English and Spanish. For example, the side of the can stated,

> **DANGER! EXTREMELY FLAMMABLE. KEEP AWAY FROM HEAT, SPARKS, FLAME AND ALL OTHER SOURCES OF IGNITION. VAPORS MAY CAUSE FLASH FIRE OR IGNITE EXPLOSIVELY**. Extinguish all flames and pilot lights and turn off all stoves, heaters, electric motors and all other sources of ignition during use and until all vapors are gone. **USE ONLY WITH ADEQUATE VENTILATION TO PREVENT BUILDUP OF VAPORS.** Do not use in areas where vapors can accumulate and concentrate such as basements, bathrooms and small enclosed areas. If using indoors, open all windows and doors and maintain cross ventilation of moving fresh air across the work area…. **IF THE WORK AREA IS NOT WELL VENTILATED, DO NOT USE THIS PRODUCT.**

(emphasis in original). The can also instructed users who wanted to remove stains from concrete to "[a]pply directly. Agitate with brush."

Juan claims that before using the Goof Off, he read at least most of the warnings on the label and opened at least one window in the basement and two doors that separated the basement from the outside. It is unclear, however, whether he turned off the pilot lights connected to two water heaters and a furnace located in a utility room in a separate portion of the basement. Juan then poured some of the Goof Off onto paint patches on the basement floor, and after let-

ting the product stand for a period of time, he spread it out initially with his foot and then with a kitchen broom. While Juan was using the broom, a fire erupted and severely burned his face, head, neck, and hands.

## B.  Legal Proceedings

Juan and his wife Billie sued Barr, alleging failure to warn and defective design (under both strict liability and negligence theories). The Suarezes argued that Goof Off is unreasonably dangerous, even when used in a foreseeable manner, and that Barr did not provide adequate warnings regarding Goof Off's dangers. They also claimed that the fire was caused by static sparks created while Juan was using the broom to spread the Goof Off,[1] and retained two experts to bolster this theory. Benjamin Miller, an electrical engineer, opined that Juan's broom was capable of producing a static charge when brushed against his body, clothing, or surroundings, and that such a charge could migrate to the floor and cause sparks. Steve Chasteen, a certified fire investigator, concluded that a static spark was the most probable ignition source, and that the fire likely was not caused by the heaters and the furnace in the utility room.

Barr moved *in limine* to exclude Miller and Chasteen from testifying at trial, and for summary judgment on all of the Suarezes' claims. The district judge declined to rule on Barr's motion *in limine* but granted its motion for summary

---

[1] It is unclear whether the Suarezes are alleging that spark occurred as the result of the broom rubbing against Goof Off itself, or against something else (such as Juan's clothing or shoes). But we need not address the issue further, since the resolution of the Suarezes' appeal does not turn on it.

judgment, concluding that: (i) Barr had complied with the requisite labeling requirements; (ii) Goof Off was not unreasonably dangerous because ordinary consumers would expect that exposing it to sparks or flames could cause a fire; and (iii) there was insufficient evidence concerning Goof Off's risks and benefits to the public, its conformity (or lack thereof) with industry standards, or any feasible alternatives. The Suarezes appeal this decision.

## II. ANALYSIS

We review the district judge's grant of summary judgment de novo and construe the facts in the light most favorable to the Suarezes as the non-moving party. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

### A. Failure-To-Warn Claim Properly Rejected

Although the parties agree that Goof Off is a hazardous substance under the Federal Hazardous Substances Act and must therefore comply with the Act's labeling requirements, we must nevertheless confirm that this agreement accurately reflects the law. The Act tells us that a "hazardous substance" includes "[a]ny substance or mixture of substances which … is flammable or combustible … during or as a proximate result of any customary or reasonably foreseeable handling or use," as defined by the Consumer Product Safety Commission. 15 U.S.C. §§ 1261(f)(1)(A)–(B). Commission regulations currently instruct that a substance is "flammable" if its flashpoint—i.e., the lowest temperature at which a compound emits ignitable vapors—is between 20° and 100°

Fahrenheit. 16 C.F.R. § 1500.3(c)(6)(ii). Goof Off's flashpoint is 0° Fahrenheit, well beyond the threshold for flammability.[2] So Goof Off is a hazardous substance under the Act, and as such, it must be accompanied with a label that conspicuously displays "an affirmative statement of the principal hazard or hazards, such as 'Flammable.'" 15 U.S.C. § 1261(p)(1)(E). The label must also identify "precautionary measures describing the action to be followed or avoided." *Id.* § 1261(p)(1)(F).

Critically, the Act also preempts any claim "based on a state-law theory that the product's label should have included particular warnings not required" by the Act and corresponding regulations. *Mwesigwa v. DAP, Inc.*, 637 F.3d 884, 887 (8th Cir. 2011); *see also Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998) (observing in passing that the Act preempted plaintiffs' state law claim); *accord Richards v. Home Depot, Inc.*, 456 F.3d 76, 78 (2d Cir. 2006); *Comeaux v. Nat'l Tea Co.*, 81 F.3d 42, 44 (5th Cir. 1996) (per curiam); *Moss v. Parks Corp.*, 985 F.2d 736, 739 (4th Cir. 1993).

### 1. Failure-to-Warn Claim Not Forfeited

The Suarezes argue that the Goof Off label violated the Act by failing to identify certain principal hazards and precautionary measures. Before addressing the substance of this argument, we begin with Barr's contention that the Suarezes forfeited the issue. Specifically, Barr argues that the amended complaint "does not claim that the Goof Off label was in violation of the [Act] or its implementing regulations in any respect." This, however, ignores the amended complaint's ref-

---

[2] In fact, Goof Off is "extremely flammable," since its flashpoint is below 20° Fahrenheit. *See* 16 C.F.R. § 1500.3(c)(6)(i).

erence to § 1261(p)(1)(F) where it states, "Defendant had an obligation to provide plaintiff, Juan Suarez, with adequate relevant information and data and warnings regarding *the proper use and risks* associated with the use of Goof Off." Am. Compl. ¶ 16 (emphasis added). Although the amended complaint does not cite § 1261, it provided Barr with adequate notice of the Suarezes' failure-to-warn claim, as evidenced by the content of Barr's motion for summary judgment, in which it argued, among other things, that Goof Off's label adequately warned about the product's flammability hazard. *Cf. Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (noting that Federal Rule of Civil Procedure 8 does not require a complaint to point to the exact statute that entitles a plaintiff to relief); *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of the claim. Factual allegations alone are what matters." (citation omitted)).

Barr also faults the Suarezes for failing to raise the precautionary measures issue in response to Barr's motion for summary judgment. But this criticism is based on a misunderstanding of the parties' burdens at summary judgment. As the moving party, Barr had the burden to show that it was entitled to judgment under established principles. In attacking the Suarezes' failure-to-warn claim, Barr discussed only the label's references to principal hazards, neglecting to mention precautionary measures. So Barr failed to meet its burden as to the latter issue. *See, e.g., Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006) ("The party opposing summary judgment has no obligation to address grounds not raised in a motion for summary judgment." (citation omitted)).

In any case, the district judge reached the issue, finding that the label contained "a list of precautionary measures that a user should take to prevent the harms associated with the product's extreme flammability." So we, too, can address the issue, despite the fact that the parties did not adequately brief it at summary judgment. *Cf. Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1259 (7th Cir. 1992) (undertaking a "more substantive review" of an issue addressed by the district court due to the "failure of both parties to address relevant case law and controlling rules in their briefing of the case before the district court").

### 2.   Label Adequately Identified Principal Hazards and Precautionary Measures

The Suarezes attack the warning label on two grounds. First, they claim that the label should have included a warning about static sparks, such as "beware of static electricity that may be generated by synthetic clothing or other sources." But as the text of the Act makes clear, a label need not identify every conceivable way in which a predicate condition for a principal hazard can occur. Rather, the label only needs to identify the principal hazard itself—here, flammability. *See, e.g.*, *Mwesigwa*, 637 F.3d at 888–89 (holding that "an additional warning indicating the magnified risk of flash fire" in certain circumstances was not required, since the label already identified flammability as the principal hazard to avoid); *Moss*, 985 F.2d at 742 (holding that a label containing the warning "combustible" in large capitalized letters adequately identified the product's principal hazard and did not need to warn against using the product near an open flame). Holding otherwise would not only ignore the plain meaning of the Act, but also result in excessively long

warning labels that would unnecessarily burden companies and consumers alike.

Here, the label stated in bolded and capitalized letters, "Danger! Extremely flammable. Keep away from heat, sparks, flame and all other sources of ignition. Vapors may cause flash fire or ignite explosively." That was enough to satisfy § 1261(p)(1)(E).

Second, the Suarezes claim that the warning label did not adequately identify the requisite precautionary measures in violation of § 1261(p)(1)(F), since it instructed consumers to do the very thing that the Suarezes contend caused the fire— agitating Goof Off with a brush. A hazardous substance is misbranded under the Act "if its packaging or labeling *fails to bear* a label warning of … precautionary measures describing the action to be followed or avoided." *Mwesigwa*, 637 F.3d at 889 (emphasis added) (citation and internal quotation marks omitted). Here, however, there is no genuine dispute that the label identified *multiple* precautionary measures for consumers to take in order to avoid a fire: "keep away from heat, sparks, flame and all other sources of ignition"; put out "all flames and pilot lights"; "turn off all stoves, heaters, electric motors, and all other sources of ignition"; "use only with adequate ventilation"; and "open all windows and doors," to name a few. *Compare with Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 862 (8th Cir. 2002) (holding that factual issue for jury existed as to compliance with the Act since label failed to note that inhalation of product's vapors was harmful or to specify any precautionary measures regarding vapor inhalation); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 112–13 (2d Cir. 2001) (vacating grant of summary judgment in defendant's favor where plaintiff had alleged that label

did not list any precautionary measures related to product's principal hazard).

Moreover, the label's brush-agitation language is better described as a "direction for use" rather than as a "precautionary measure," since agitation is not an action meant to prevent something problematic from happening. Indeed, we understand the core of the Suarezes' argument to be that Juan suffered significant harm while *complying* with Goof Off's instructions—in other words, while using Goof Off as Barr intended the product to be used. That relates to Goof Off's alleged design defect, which we address below.

## B. Genuine Factual Dispute Regarding Alleged Defective Design Under Strict Liability

In order to establish strict products liability under Illinois law, a plaintiff must prove: (i) the product had an unreasonably dangerous condition, (ii) the condition existed when the product left the manufacturer's control, and (iii) the condition injured the plaintiff. *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008). When the plaintiff's claim is based on an alleged design defect, the "unreasonably dangerous" element can be proved in one of two ways. The consumer-expectation test provides for liability if "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Lamkin v. Towner*, 563 N.E.2d 449, 457 (Ill. 1990). The risk-utility test asks if "on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." *Id.* "Where the two tests yield conflicting results, … the risk-utility test 'trumps,' and the product is deemed not unreasonably dangerous (notwithstanding consumers' expectations that the product would be safer)." *Ferraro v.*

*Hewlett-Packard Co.*, 721 F.3d 842, 848 (7th Cir. 2013) (citing *Mikolajczyk*, 901 N.E.2d at 352). The Suarezes invoke both tests here.

### 1. Consumer-Expectation Test Satisfied

The crux of the Suarezes' consumer-expectations argument is that an ordinary consumer would not assume that agitating Goof Off with a brush—as the product's label instructed—would cause the product's vapors to ignite. In support, the Suarezes rely on the electrical engineer they retained, who opined that the broom Juan used could have caused a static spark if it had brushed against Juan's body, clothing, or surroundings, and on the fire investigator they retained, who concluded that a static spark is the likeliest source of ignition. This was enough to create a genuine issue of material fact as to consumer expectations.

Barr attacks the Suarezes' position on a number of grounds. First, it claims that the Suarezes forfeited their contention that Goof Off was defective because agitating it with a brush as instructed could result in a fire. We disagree. Generally, a party has forfeited an issue on appeal if it has failed to adequately present the issue to the district judge. *E.g.*, *Kunz v. DeFelice*, 538 F.3d 667, 681 (7th Cir. 2008). The Suarezes allege in their amended complaint that Juan used Goof Off "as directed" and "in a foreseeable manner," and the parties do not dispute that Juan "agitated" the Goof Off with a broom as the label directs. At summary judgment, the Suarezes repeatedly insisted that an ordinary consumer would not be aware that a static spark could ignite Goof Off vapors. Barr appears to believe that in pressing this point, the Suarezes were not concerned with consumer expectations about the *source* of sparks. But this ignores the fact that

the Suarezes were not focused on sparks in an abstract sense—i.e., sparks that could be created by myriad objects or actions. Rather, as the parties' summary-judgment and motion-*in-limine* briefing demonstrates, the Suarezes were concerned only with sparks caused by agitating Goof Off with a brush in accordance with the warning label. So the Suarezes adequately claimed that their design defect claim was premised on the idea that Juan had suffered harm from agitating Goof Off as directed.

Second, Barr argues that Juan failed to act like an ordinary consumer when he ignored the warning label's instruction to extinguish all nearby pilot lights before applying Goof Off. To support its position, Barr points to a medical examination report indicating that Juan told medical treatment personnel that "[t]he pilot light in another room started, it then sparked and started the floor on fire." But there is reason to doubt the accuracy of this treatment record. Juan appears to have a poor command of English, and the treatment record does not indicate whether Juan was speaking English, or whether the physical therapist or someone else was translating. Moreover, at his deposition, Juan did not recall making this statement, nor could he recall whether he had turned off the pilot lights on the furnace or the two water heaters. So there is a genuine factual dispute about the source of ignition.

Third, Barr faults Juan for using the Goof Off in his basement, despite the label's warning to not use Goof Off "in areas where vapors can accumulate and concentrate such as basements." *Cf. Taylor v. Gerry's Ridgewood, Inc.*, 490 N.E.2d 987, 992 (Ill. App. Ct. 1986) ("Where a warning has been communicated, a manufacturer is entitled to assume that the

user will read and follow the furnished instructions."); *accord Haddix v. Playtex Family Prods. Corp.*, 138 F.3d 681, 686 (7th Cir. 1998). However, a genuine factual issue exists as to whether Juan's basement qualifies as such an area. For one, it is unclear whether Juan's basement was poorly ventilated, since he claims that before using the Goof Off, he opened not only a window in the basement but also two doors that separated the basement from the outside. In addition, we do not know how long Juan waited between applying Goof Off on the floor and spreading it with his foot and broom. If this duration was short—as Juan said it was during one point in his deposition—it may be irrelevant that the product was used in his basement (and not another, better-ventilated space).

Finally, Barr maintains that the Suarezes have not supplied sufficient evidence indicating that static electricity actually ignited the Goof Off vapors. Recognizing that the Suarezes' causation theory relies on the opinions of the Suarezes' electrical engineering and fire investigation experts, Barr attacks the methodologies employed by both individuals under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Barr criticizes Miller, the electrical engineer, for not "test[ing] the broom's propensity to produce or discharge an electric charge in the circumstances presented in [Juan]'s basement." According to Barr, Miller should have used or agitated Goof Off with a broom; "measure[d] the amount of electric charge, if any, produced by agitation of Goof Off on a grounded concrete floor"; and determined "what quantity of static electricity, if any, would be required to ignite Goof Off vapors." Barr also attacks the methodology used by Chasteen, the fire investigator, on the ground that it failed to

comport with the National Fire Protection Association's guide for fire and explosion investigation in several vital ways.

Barr presented these arguments to the district judge via two motions *in limine*. But the judge declined to rule on the motions, concluding that they were rendered moot by his decision to grant Barr's motion for summary judgment. Since we have concluded that the grant of summary judgment was improper, we need not resolve the issue now, though the district judge will likely have to consider the parties' *Daubert* arguments on remand. *Cf. United States v. Funds in the Amount of One Hundred Thousand One Hundred & Twenty Dollars ($100,120)*, 730 F.3d 711, 721 n.13 (7th Cir. 2013) (reversing grant of summary judgment, and remanding with recommendation that district judge consider Rule 702/*Daubert* arguments that were raised but not resolved at summary judgment).

### 2. Risk-Utility Test Satisfied

When applying the risk-utility test, Illinois courts consider a numbers of factors, including: (i) the product's utility to the public, (ii) the likelihood and probability of foreseeable injury to consumers, (iii) any instructions and warnings accompanying the product, (iv) the nature and strength of consumer expectations, (v) the manufacturer's ability to eliminate unsafe characteristics without excessively affecting usefulness or price, (vi) the availability and feasibility of alternate designs, and (vii) conformity with any applicable industry standards and governmental regulations. *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1154 (Ill. 2011); *Mikolajczyk*, 901 N.E.2d at 352.

The Suarezes have adequately shown that Goof Off does not pass muster under the risk-utility test. As discussed above, the testimony from the Suarezes' experts indicates that using Goof Off in accordance with its warning label poses a serious risk of injury to consumers. And this risk very possibly exceeds the product's utility to the public— particularly given the fact that there exists a water-based version of Goof Off that is not flammable and that has been marketed as a paint remover.

The district judge found there to be an absence of "any affirmative evidence" that water-based Goof Off was a feasible alternative to acetone-based Goof Off for removing paint. We conclude, however, that the Suarezes have adequately shown that a genuine factual dispute exists as to whether water-based Goof Off is a cost-effective, practical, and technologically feasible alternative that would have prevented Juan's accident. *Blue v. Envtl. Eng'g, Inc.*, 828 N.E.2d 1128, 1142–43 (Ill. 2005).

Water-based Goof Off was clearly cost-effective, since it was being manufactured and distributed widely. Indeed, Dennis Shireman, Barr's senior director of research and development, testified that water-based Goof Off is neither extremely flammable nor flammable under "ordinary circumstances," is generally intended for consumer use, is generally available in various sizes, and had been marketed as an effective remover of tough spots and stains.

The Suarezes also produced enough evidence suggesting that water-based Goof Off was a practical and technologically feasible alternative. One of Barr's experts, Steven Arndt, testified that water-based Goof Off was one of several products that Barr marketed for spot removal and would be "ap-

propriate" to use to remove paint. Moreover, it appears that Timothy Whelan, Barr's former senior brand manager for Goof Off, also testified that water-based Goof Off can serve as a paint remover, though he noted that the acetone-based version removes latex-based paint at a faster rate. In addition, Shireman testified that Barr sells non-flammable paint strippers (though he did not expressly identify water-based Goof Off by name), and that he was unaware if Barr had indicated to consumers when it would be appropriate to use acetone-based Goof Off rather than the water-based version.

In sum, we find that the Suarezes have marshalled enough facts indicating that the risk-utility test weighs in their favor to survive summary judgment. *See, e.g., Malen v. MTD Prods., Inc.*, 628 F.3d 296, 308 (7th Cir. 2010) (concluding that a jury could find that the design was defective where the alternative was the defendant's very own design, was conceived before the product that caused the plaintiff's injuries was built, and was incorporated into later product models); *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 45–46 (Ill. 2002) (finding that evidence supported the jury's verdict in favor of the plaintiff's estate where the defendant made a different product that was designed to prevent the harm at issue at the cost of several cents per unit).

### C. Genuine Factual Dispute Regarding Alleged Defective Design Under Negligence

A product liability claim based on negligent design requires a plaintiff to satisfy the quintessential common law negligence framework of duty, breach, causation, and damages. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007). As with strict liability, a negligent design claim requires proof of an unreasonably dangerous condition, but

with the added ingredient of fault on the defendant's part. *Id.* at 263–64. Fault can exist when the defendant "knew or should have known of the risk posed by the product design at the time of manufacture." *Id.* at 264.

We conclude that a genuine factual issue exists as to whether Goof Off was negligently designed. As explained above, the Suarezes have identified an unreasonably dangerous condition—the possibility that Goof Off can ignite during the brush-agitation process. They have also provided sufficient evidence that Barr failed to adequately test its product, insofar as Barr's senior director of research and development acknowledged that he was unaware of any testing or internal discussions within Barr regarding static electricity being able to ignite Goof Off. In addition, the fact that the risk-utility test may favor the Suarezes also supports a finding that Barr's conduct was unreasonable. *See Jablonski*, 955 N.E.2d at 1154–55 (observing that the Illinois Supreme Court and numerous commentators have concluded that "risk-utility balancing remains operative in determining whether a defendant's conduct is reasonable in a negligent-design case").

Barr faults the Suarezes for not alleging in their amended complaint that Barr had failed to test whether Goof Off vapors could be ignited by static electricity. We disagree. As a threshold matter, a complaint need not contain every fact necessary to survive a motion for summary judgment. *See Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) ("Litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's *proof* leads to windy complaints and defeats the function of Rule 8."); *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (observing that a complaint need only include "a short and plain statement of the claim" and not "detailed factual allegations" (citation and internal quotation marks omitted)).

In addition, the Suarezes clearly discussed the senior director's testimony in their opposition to Barr's motion for summary judgment. And the district judge, in granting Barr's motion for summary judgment, concluded that the Suarezes had not shown that Barr had failed to test its product. In doing so, he did not limit his finding to any particular type of testing. So we can reach the issue, despite the fact that the parties may not have thoroughly briefed the issue at summary judgment. *See Hughes*, 975 F.2d at 1259.

### III. CONCLUSION

The judgment of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED for proceedings consistent with this opinion.