**Lee L. MCGRATH, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION, Defendant–Appellee.**

No. 00–4237.

United States Court of Appeals, Sixth Circuit.

Jan. 18, 2002.

---

Before BOGGS, GILMAN, and BRIGHT,* Circuit Judges.

PER CURIAM.

Lee McGrath, executor of the estate of Nicol McGrath, appeals the district court's grant of summary judgment to General Motors Corporation (GM). McGrath brought a state-law strict-liability action in tort against GM, claiming that the Buick LeSabre in which Nicol McGrath was rid-

* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

ing was defectively designed because it failed to meet consumer expectations of safety for side-impact crash protection. The district court granted GM's motion for summary judgment. For the reasons stated below, we affirm the district court's grant of summary judgment on McGrath's tort claim. We also affirm the district court's grant of summary judgment on McGrath's wrongful death and survivorship claims, since there is no basis for liability once the tort claim has been dismissed.

## I

On March 13, 1994, Mark Beach lost control of his Buick LeSabre while making a right turn. The car skidded and entered the oncoming lane of traffic. The car continued to skid sideways, until it was struck by an oncoming southbound vehicle. Beach's car was struck on the passenger side door, which crumpled. The parties disagree as to the speed of the vehicles when the collision occurred. Nicol McGrath was a seatbelted passenger in the front seat of the car. Ms. McGrath suffered trauma to her chest, and died two hours later.

Lee McGrath sued GM, alleging that the LeSabre's design was defective because it was "more dangerous than an ordinary consumer would expect." This cause of action is created by Ohio law. O.R.C. Ann. § 2307.75 (Anderson 2001).

During discovery, GM deposed Dan Beabout, the plaintiff's primary witness. After discovery had been conducted, GM filed for summary judgment on all claims. The motion for summary judgment pointed out that (1) Mr. Beabout provided no evidence of an alternative feasible design, as is required under Ohio law, (2) Mr. Bea-

bout had not indicated a specific design defect in the LeSabre, and (3) McGrath presented no evidence of consumer expectations beyond conclusory statements and an inapplicable federal motor vehicle safety standard. The court granted summary judgment and dismissed McGrath's claims. Mr. McGrath filed a timely notice of appeal.

## II

We review a grant of summary judgment *de novo*. *Zettle v. Handy Mfg. Co.*, 998 F.2d 358, 360 (6th Cir.1993). In conducting this review, the court should construe all facts in favor of Mr. McGrath (the non-movant below). *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991), *cert. denied*, 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). Summary judgment is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.

### A. Consumer Expectation

McGrath brings this action under O.R.C. § 2307.75(A)(2), which states:

(A) Subject to divisions (D), (E) and (F) of this section, a product is defective in design or formulation if . . .

 \* \* \* \* \* \*

(2) It is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

■ Under this "consumer expectation" test, McGrath must establish that the ordinary consumer in 1987 would expect to survive a crash at the speeds involved in the accident (which are, of course, contested[1]). To establish consumer expectations,

---

1. Since the court below granted summary judgment, we must assume that the speed

involved in the accident was indeed below

McGrath relies on Federal Motor Vehicle Safety Standard (FMVSS) 214, a dynamic crash test standard that requires vehicles to be able to withstand a side impact at 33.5 miles per hour. McGrath's claim was that "the expectation was, as established by Federal Motor Vehicle Safety Standard 214 ... that the LeSabre's side intrusion design would protect occupants from fatal injuries in impacts of less than 33.5 miles per hour." However, this version of the standard did not become effective until September 1, 1993. 49 C.F.R. § 571.214 (2000); 55 Fed.Reg. 45772 (1990).

The district court held:

Plaintiff has failed to present evidence that an ordinary consumer is aware of the requirements of FMVSS 214 as they existed when the 1987 LeSabre was designed and left defendant's control. Additionally, the current version of FMVSS 214, on which Mr. Beabout based his conclusions, is of limited value in evaluating the side impact protection system of a 1987 LeSabre. As defendant's expert ... testified, during the period 1983 to 1986 there was no dynamic FMVSS 214 test [for side-impact].

At the time the LeSabre left GM's control in January 1987, FMVSS 214 used a "static" test for determining side impact performance. This test employed a loading device 12 inches in diameter to force the passenger car door. Standard 214, Side Door Strength, 36 Fed.Reg. 22902, 22962 (1971); O.R.C. § 2307.73(A)(2). Beabout testified that he was aware of no evidence that the LeSabre failed to comply with the FMVSS 214 standard in force in January 1987.

The later version of FMVSS 214 upon which McGrath relies uses a "dynamic test." In this test a moving barrier strikes the car at 33.5 miles per hour. 49 C.F.R.

33.5 miles per hour, as argued by McGrath,

§ 571.214s1.3(b) (2000); 55 Fed.Reg. 45772 (1990). This version of FMVSS 214 was approved on October 30, 1990. Automobile manufacturers were required to begin compliance on September 1, 1993. 55 Fed. Reg. 45772 (1990).

The parties dispute the speed at which the vehicles were traveling (and therefore whether the LeSabre in fact met the later FMVSS 214 standards); GM asserts speeds between 38 and 49 mph. McGrath asserts speeds between 23.9 and 30.5 miles per hour.

■ Finally, McGrath argues that Beabout provided evidence that customers have a greater expectation of safety in a luxury vehicle. Beabout's testimony consisted of stating that "new safety features are introduced in luxury models and so there's an expectation that luxury models lead in the area of safety." There is no question of leading or following in safety with respect to FMVSS 214, however. All cars must meet the FMVSS 214 standard in effect at the time of manufacture. A compliant side-impact system is not a luxury item, and McGrath does not present any evidence that the LeSabre did not comply with its contemporaneous standard.

**B. Availability of an Alternative Feasible Design**

O.R.C. § 2307.75(A)(2), upon which McGrath bases his action, is subject to subsection (F). Subsection (F) of O.R.C. § 2307.75 reads:

(F) A product is not defective in design or formulation if, at the time the product left the control of its manufacturer, a practical and technically feasible alternative design or formulation was not available that would have prevented the harm for which the claimant seeks to

the non-movant.

recover compensatory damages without substantially impairing the usefulness or intended purpose of the product, unless the manufacturer acted unreasonably in introducing the product into trade or commerce.

■ The subsection does not state whether the plaintiff or defendant bears the burden of production of an alternative design. Under Ohio case law, plaintiffs bear the burden of production. *Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219, 1242 (6th Cir.1995). In *Jacobs,* the court stated that a manufacturer is not liable for a statutory design defect claim brought pursuant to O.R.C. § 2307.75 unless the plaintiff presents proof of an alternative feasible design. *Ibid.* at 1242.

The *Jacobs* court noted:

We believe that subsection (F) of § 2307.75 exempts Du Pont from liability under this statute. Appellants have not offered any evidence that there was an alternative design ... that would have avoided the injuries in this case, or that such an alternative would not have undermined the efficacy of these materials ....

*Jacobs,* 67 F.3d at 1242.

Similarly, in *Mercurio v. Nissan Motor Corp.,* No. 3:97 CV 7067 (N.D.Ohio Feb.4, 2000), the court held that in order to establish a design defect under O.R.C. § 2307.75, the plaintiff must "demonstrate a technically feasible alternative design that would have prevented the harm without substantially impairing the [product's] usefulness or purpose." *Ibid. See also Bloomer v. Van–Kow Enterprises,* No. 096462, 1994 WL 173651, *3 (Cuyahoga Cty. May 5, 1994) (affirming summary judgment where plaintiff did not offer evidence that an alternative design would have been economically and technically feasible).

McGrath's argument that he is not required to provide such evidence is therefore without merit. His attempt to characterize the *Jacobs* rule as dicta also fails. The court in *Jacobs* directly addressed the appellant's claim for defective design under O.R.C. § 2307.75, the same statute and cause of action brought here by McGrath. The court disposed of this claim on the lack of evidence of alternative design.

In the alternative, McGrath asserts that he has provided evidence of an alternative design system. McGrath claims that the fact that Mr. Beabout had worked on an improved side-impact system for the Chrysler Prowler and Ford Taurus establishes that there was an alternative to the side-impact system used by Buick in the LeSabre. However, Beabout himself agreed that "other than making the statement that it was technologically feasible," he would "not be offering any testimony on an alternative feasible design."

Mr. Beabout worked on the side impact structure in those vehicles from 1994 to 1998, approximately seven to ten years after the LeSabre left GM's control. McGrath has provided no proof that the side impact structures Beabout worked on for the Prowler and Taurus were technologically available for use in the Buick LeSabre seven years earlier. As GM points out, the March 13, 1994 accident itself predates Beabout's work on the side impact structures of the Prowler and Taurus.

■ Also, McGrath has provided no evidence that the later-developed Prowler or Taurus systems would physically fit inside the 1987 LeSabre, or were economically feasible. *See Bloomer,* 1994 WL 173651 at *3. In *Mercurio,* the plaintiff brought an Ohio defective design claim. No. 3:97 CV 7067 at 2. The plaintiff claimed that a 1993 Nissan Altima was defectively designed because the driver's side floor pan rein-

forcement member buckled upward into the occupant space. *Id.* at 2, 4. The plaintiff attempted to show that alternative designs created for another vehicle (the floor pan design found in a Volvo 850) established that an alternative design was available. *Id.* at 4. The court stated:

Although the design Plaintiff proposes undoubtedly has been tested in some contexts—it exists in the Volvo 850—there is no evidence that it has ever been tested for feasibility in a Nissan Altima. Plaintiff does not allege that her experts have done any computer modeling, prototype construction, or any other scientific research indicating that her alternative design would function in a 1993 Altima. Plaintiff does not allege that any testing has been performed to determine the possible effects her alternative design would have on the cost, styling, practicality, or overall safety of the Altima. Plaintiff does not allege that her experts have done any computer modeling or other research to determine how an Altima with her proposed alternative design would have functioned under accident conditions identical to those in the case at bar, and whether the design would have prevented Mr. Mercurio's injuries.

*Id.* at 6. Likewise, McGrath has offered no evidence of testing that would establish an alternative available to GM when the LeSabre left its possession in 1987. Since McGrath failed to present proof that a feasible alternative design for the LeSabre's side impact structure existed when the LeSabre left GM's control, under O.R.C. § 2307.75, McGrath has failed to make his case, and summary judgment was properly granted.

McGrath also suggests, briefly, that this case was not in fact brought solely under O.R.C. § 2307.75 (despite the fact that his complaint states otherwise), but also under a common-law strict-liability theory that he claims was not preempted by the enactment of § 2307.75. Despite the fact that his claim appears purely statutory in nature, McGrath relies on *Carrel v. Allied Products Corp.,* 78 Ohio St.3d 284, 677 N.E.2d 795 (1997), to assert a common-law products-liability claim for the first time on appeal.

Even if these arguments were properly before us on appeal, McGrath misstates the holding in *Carrel.* The *Carrel* court held that common-law *negligence* claims alleging negligent design survived the passage of the Products Liability Act of Ohio. *Carrel,* 78 Ohio St.3d at 289, 677 N.E.2d 795. It did not hold that common-law strict-liability claims were still viable. Plaintiff's complaint clearly states that his theory is based on strict liability and has presented no evidence of negligence on GM's part.

## C. Identification of Defect

▇ In a products liability case, the plaintiff must prove, by a preponderance of the evidence, that (1) a defect existed in the product manufactured and sold by the defendant; (2) the defect existed at the time the product left the hands of the defendant; and (3) the defect was the proximate cause of the plaintiff's injuries or loss. *State Farm Fire & Cas. Co. v. Chrysler Corp.,* 37 Ohio St.3d 1, 5–6, 523 N.E.2d 489 (1988).

This means the defect must be adequately identified. Where a plaintiff has "no expert analysis or other evidence demonstrating that some aspect of the design" was defective, the claim is dismissed. *Id.* at 8, 523 N.E.2d 489.

GM claims that the grant of summary judgment also should be affirmed because McGrath offered no specific indication as to what element of the GM design was flawed. GM's argument is based on Bea-

bout's deposition testimony. In answer to the question "where did General Motors err in its calculations or its design, in your judgment?" Mr. Beabout answered: "Well, I'm not sure exactly. There wasn't enough information to determine that exactly." In response to the question "What changes have you come up with that are necessary or should have been incorporated into this 1987 Buick LeSabre?" Beabout answered "I haven't come up with any changes."

However, Beabout was also asked: "What was it in your judgment that was technologically feasible in designing this vehicle that was not part of the design when it was introduced ...." He answered: "[T]he expectation should be that the collapse of the B-pillar and other items that I mentioned in my report would not have occurred." In answer to the question "[W]hat was it about the design of this vehicle that was inadequate for crash worthiness protection?", Beabout said: "Well, the stiffness and the support, the plastic deformation characteristics of the B-pillar .... The support and resistance characteristics of the roof and the floor pan ...." Further, Beabout's report, noting that the B-pillar was the "primary bad actor," also stands as evidence of what defect was being alleged.

Under Ohio law, a high degree of specificity is required; however, the requirement is not insurmountable. In *Fisher v. Ford Motor Co.*, 13 F.Supp.2d 631 (N.D.Ohio 1998), the plaintiff alleged that she was injured in a car accident due to her airbag's defective design. *Id.* at 633. The defendant argued that the plaintiff failed to present any evidence of defective design because the plaintiff's expert could not pinpoint the specific component that was defective. *Ibid.* The court disagreed, stating that the expert had indicated that it was the combination of the airbag re-

straint system and the standard seat track that caused the plaintiff's injuries. *Id.* at 639. An expert opinion, locating the alleged defect of design in a component or combination of components is sufficiently specific to satisfy Ohio law. *See Shaw v. Toyotomi America, Inc.*, 101 Ohio App.3d 54, 654 N.E.2d 1337 (1995) (expert theory that a kerosene heater was defectively designed was sufficient evidence where the expert identified the most likely source of the leak).

 Here, Beabout has similarly identified the culprit: he states that the B-pillar collapsed and allowed excessive intrusion into the passenger compartment, and that such collapse "would not have occurred" in a non-defective side-impact system. Beabout's testimony is enough to meet the standards required to avoid summary judgment on this point.

The alleged defect was adequately identified so as to avoid summary judgment against McGrath on this basis. However, the ultimate judgment of the district court can nevertheless be affirmed on the grounds discussed in Parts II.A and B, above.

III

The district court's judgment is therefore AFFIRMED.