**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

Case No. 17-4159

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 04, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CAROL J. REES and JEFF REES, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| W.M. BARR & COMPANY, INC., et al., | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: COOK and DONALD, Circuit Judges; HALE, District Judge.[*]

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiffs-Appellants Carol J. Rees ("Carol") and Jeff Rees ("Jeff") (collectively, "the Reeses") appeal the district court's grant of summary judgment to Defendants-Appellees W.M. Barr & Company, Inc. ("Barr & Co."), and The Home Depot, Inc. ("HD Inc.") in the Reeses' civil action arising from injuries Carol sustained while using Goof Off Professional Strength Remover ("Goof Off," or "the Product"), a home cleaning product. Carol's injuries occurred as a result of a flash fire caused by the detonation of highly flammable fumes from the Product, which she was using to remove adhesive from a floor in the Reeses' home. For the reasons stated herein, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable. David J. Hale, United States District Judge for the Western District of Kentucky, sitting by designation.

Case No. 17-4159
*Rees v. W.M. Barr & Co.*

## I.      Background of the Case

### A.      <u>Factual Background</u>[1]

The Reeses are ordinary consumers with no specialized training or experience in construction, demolition, or the handling and use of highly flammable liquids. (Appellants' Br. at 7). On August 12, 2013, the Reeses went to their local Home Depot store in Gahanna, Ohio, to purchase a product to remove adhesive from concrete surfaces. The Reeses had recently pulled up carpet squares from the floor of what had been their children's play room in their home in Westerville, Franklin County, Ohio. Adhesive from the carpeting was visible on the exposed concrete floor, and the Reeses wished to remove that adhesive.

After examining various product containers, the Reeses selected a product called "Goof Off," which is identified on the container as a "Pro Strength Remover," and which is manufactured by Barr & Co. Based on a recommendation on the label to test the product on a small area first, the Reeses purchased the smallest available size, a 4.5-ounce size can. "The primary active ingredient in Goof Off is acetone, which is extremely flammable and evaporates quickly at room temperature." *Suarez v. W.M. Barr & Co., Inc.*, 842 F.3d 513, 516 (7th Cir. 2016).[2] Carol testified at deposition that she did not read all of the warnings and instructions on the label, but that she recalled reading the words, "Danger! Extremely flammable" and "Danger! Harmful or fatal if swallowed. Vapor harmful. Eye irritant." (See Appellants' Br. at 8). Those phrases were printed in red boldface type on the label. Carol also testified that though she read "Danger! Extremely flammable" on the side of the label, she did not read the same words on the front of the label.

---

[1]The facts set forth in Section I.A of this opinion are undisputed, unless otherwise specified.

[2]*See also Acetone*, PUBCHEM OPEN CHEMISTRY DATABASE, NATIONAL INSTITUTES OF HEALTH, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, https://pubchem.ncbi.nlm.nih.gov/compound/Acetone-d6#section=Top, at 7.1.1 (Safety and Hazards) (last accessed May 9, 2018) ("H225 (100%): Highly Flammable liquid and vapor.").

When asked, "Why not read the entire label on the 12th of August 2013?" she answered, "I basically was after what the product would do," denying being "in any kind of hurry" to leave Home Depot that evening. Carol stated that none of the text on the 4.5-ounce can was too small for her to read, but that "[she] read the bigger letters, the darker letters, and the red letters," Among the boldface, all-capitals text were the following precautionary instructions: "Keep away from heat, sparks, flame and all other sources of ignition. Vapors may cause flash fire or ignite explosively," "Use only with adequate ventilation to prevent buildup of vapors," and "If the work area is not well ventilated, do not use this product." These precautions, however, were not among the parts of the text that Carol testified she read. She also testified she did not habitually read product labels in their entirety.

Carol tested Product the next day, August 13, 2013, applying small amounts of Product onto the concrete and adhesive, then agitating the surface with a stiff-bristled brush per the label instructions. Carol was able to remove a small portion of the adhesive from the floor without problem or incident, and considered the test successful. That evening, Carol and Jeff purchased a one-gallon container of Goof Off at Home Depot, the largest size available. Carol did not read the gallon-container label. She was "satisfied with what [she] had learned from the smaller can and that this was the same product."

Around 9:00 a.m. the next day, August 14, 2013, Carol resumed the work of removing the adhesive, this time using the gallon container of Goof Off. Carol did not extinguish the pilot lights on the water heater and furnace in the basement. After approximately 20 to 30 minutes of work, during which she used approximately half of the contents of the container, Carol heard a loud "whoosh" from behind her, coming from the direction of the water heater and furnace, and found herself engulfed in flames. Within approximately four minutes, she was able to extinguish the

flames, but she sustained serious, life threatening burn injuries. The fire was caused by the ignition of Goof Off vapors by the pilot light or main burner of the water heater.[3] The water heater was some twelve to sixteen feet from where Carol was working. Emergency responders came to the scene and transported Carol to The Ohio State University Hospital.

Carol sustained third degree, full thickness burns to her arms, legs, and face. (Appellants' Br. at 10). She was burned on 44% of her body surface. Carol was admitted to The Ohio State University Wexner Medical Center burn unit, where she was an inpatient for two months. (Appellants' Br. at 10). She was discharged on October 17, 2013. (*Id.*). She is likely to require lifetime medical care for her burns. Expenses for Carol's burn injuries through January 2017 were estimated at $800,000. The aggregate lifetime cost of her medical care is projected to exceed $1,000,000.

## B.     Procedural History

Carol sustained her burn injuries on August 14, 2013. The Reeses filed their products liability action in Franklin County Common Pleas Court on August 10, 2015. The complaint asserted statutory strict liability claims for defective design and inadequate warning under Ohio Revised Code § 2307.71 *et seq.*, and for negligence against Defendant HD Inc. for selling Product "knowing that when used in a reasonably foreseeable manner and for its intended purpose the product had a great probability of causing substantial harm and that it was defective in design, and/or manufacture or construction, and/or due to inadequate warning or instruction." The Reeses also asserted a subrogation claim on behalf of party defendant Optum. Finally, Jeff asserted a claim for loss of spousal consortium.

---

[3]Plaintiffs' expert George J. Wharton stated that the source of ignition was "either the gas water heater or the furnace." However, as Defendants' expert R. Thomas Long, Jr. notes, the furnace hypothesis could be discarded due to the high summer temperatures, and there being no evidence that the heating system was on at the time of the incident. Regardless of this slight discrepancy, the source of ignition for the fire is not disputed by the parties.

On September 10, 2015, Barr & Co. and HD Inc. removed the action to the United States District Court for the Southern District of Ohio, Eastern Division, based on diversity jurisdiction. Thereafter, Barr & Co. and HD Inc. moved for summary judgment.

On September 29, 2017, the district court granted summary judgment for Barr & Co. and HD Inc. *Rees v. W.M. Barr & Co.*, No. 2:15-cv-2821, 2017 U.S. Dist. LEXIS 161573 (S.D. Ohio Sept. 29, 2017). Regarding the Reeses' failure to warn claim, the district court held that the Reeses failed to present sufficient evidence that the allegedly inadequate warning on the Goof Off containers was the proximate cause of Carol's injuries. *Id.* at \*13-14. As to the Reeses' design defect claim, alleging the gallon size of Goof Off itself as the defect, the court held that the Reeses failed to present evidence that the design container increased the risk of harm from the product; failed to analyze the Ohio Rev. Code § 2307.75(B) statutory factors; failed to conduct the required analysis of both the costs and benefits of the product; and failed to provide the court with a feasible alternative design that would have prevented Carol's injuries. *Id.* at \*16-18. As to the Reeses' negligence claim against HD Inc., the district court held that, because of its finding "that to the extent any defect existed, [proximate][4] cause did not, there can be no liability against Home Depot for Plaintiffs' injuries." *Id.* at \*19. This timely appeal followed.

## II.     Analysis

On appeal, the Reeses argue that they met their burden with respect to their failure to warn claim because the record contains conflicting evidence from the parties' experts as to whether the

---

[4]The opinion reads, in pertinent part: "Because the Court has found that to the extent any defect existed, *probable* cause did not, there can be no liability against Home Depot for Plaintiffs' injuries." *Rees*, 2017 U.S. Dist. LEXIS 161573, at \*19 (emphasis added). Because the district court had, earlier in the opinion, grounded its grant of summary judgment on Plaintiffs' failure to make the requisite showing that any defect in the warning label had *proximately caused* Plaintiff's injuries, we infer that the phrase "probable cause" in the opinion is an inadvertent error, and that the district court's intended meaning was "proximate cause." *See Soto-Murillo v. Lynch*, 643 F. App'x 504, 507 (6th Cir. 2016) (correcting "obvious" typographical error in text of decision below, based on text of preceding paragraphs); *see also Jordan v. Comm'r of Internal Revenue*, 469 F. App'x 460, 460 (6th Cir. 2012) (correcting typographical error in opinion below, based on internal contextual evidence from elsewhere in opinion).

warning label on the Product met the requirements of the Federal Hazardous Substances Act (FHSA), 15 U.S.C. § 1261 *et seq.* The Reeses also argue that a jury question is present regarding their design defect claim regarding the size of the gallon can of Product, and that expert testimony is not required as to that claim. Finally, the Reeses argue that a jury question is present regarding their negligence claim against HD Inc. for marketing and selling Product to ordinary consumers.

### A.      **Standard of Review**

We review *de novo* a grant of summary judgment. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 526 (6th Cir. 2012). "[W]e do not weigh the evidence, but rather view the evidence in the light most favorable to [the nonmovant] to divine the existence of a genuine dispute of material fact." *Crestview Parke Care Ctr. v. Thompson*, 373 F.3d 743, 755 (6th Cir. 2004) (alterations added). Summary judgment is appropriate "if the pleadings, the discovery and the disclosure materials on file, and any affidavits 'show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). There is "no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the'" nonmovant. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To defeat summary judgment requires more than a mere "scintilla of evidence," but rather "evidence on which the jury could reasonably find for the" nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "pivotal question" is "whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A failure of proof concerning an essential element of" a claim "renders all other facts immaterial." *Elvis Presley Enters. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

B. **Applicable Law**

Where, as here, an action "was removed to federal court on the basis of diversity jurisdiction, we look to the substantive law of . . . the forum state, and apply federal procedural law." *May v. Citimortgage, Inc.*, 648 F. App'x 567, 571 (6th Cir. 2016) (citing *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)). Product liability claims in Ohio are governed by the Ohio Products Liability Act ("OPLA"), Ohio Rev. Code § 2307.71, *et seq.* Section 2307.75(A) defines when a product is defective in design or formulation, involving a balancing of foreseeable risks, *id.*, § 2307.75(B), and benefits, *id.*, § 2307.75(C), associated with the design or formulation. Product defect due to inadequate warning or instruction is governed by Ohio Rev. Code § 2307.76. The FHSA provides a uniform, national standard for the labeling of hazardous substances sold in interstate commerce and intended or suitable for household use. *Richards v. Home Depot, Inc.*, 456 F.3d 76, 78 (2d Cir. 2006). The FHSA preempts state claims seeking to impose labeling requirements different from those in the FHSA and regulations pursuant to it. *Id.* On the other hand, a state failure-to-warn claim may proceed based on a product label's alleged noncompliance with the FHSA. *Mwesigwa v. DAP, Inc.*, 637 F.3d 884, 887 (8th Cir. 2011).

C. **Inadequate Warning Claim**

The Reeses argue that they have established "[a] jury question . . . with respect to the failure to warn claim because there is conflicting evidence from the parties' experts whether the warnings on the can complied with the [FHSA]." (Appellants' Br. at 11). The Reeses further observe that their expert "testified that the warnings were not sufficiently conspicuous so as to comply with the FHSA and that the failure to comply resulted in the most important warning which would have prevented the horrific accident being the least likely to be read by a consumer," while Defendants' expert "ha[d] a different opinion." (*Id.*).

### 1. *Waiver of Argument*

The district court granted summary judgment to Defendants as to the Reeses' inadequate warning claim without reaching the issue either of the warning's sufficiency generally, or of the warning's compliance with the FHSA. *Rees*, 2017 U.S. Dist. LEXIS 161573, at \*9-14. Rather, the district court held that "Plaintiffs ma[d]e no argument that the coloring or placement of the warning was the proximate cause of [Carol's] injuries . . . ." *Id.* at \*11. On appeal, the Reeses continue to press their inadequate warning claim based on the Goof Off warning label's alleged violation of the FHSA. (Appellants' Br. at 17-25). Because the Reeses fail to address the district court's reasoning regarding their inadequate warning claim, Defendants-Appellees argue that the Reeses have waived their argument on this issue. (Appellees' Br. at 13 (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005))).

Failure to raise an argument in an appellate brief waives the argument on appeal. *Radvansky*, 395 F.3d at 311 (citing *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003)). More specifically, where a plaintiff fails to address the district court's reasoning in disposing of a claim on summary judgment or motion to dismiss, we have deemed the claim forfeited. In *Grosswiler v. Freudenberg-NOK Sealing Techs.*, we held that the plaintiffs' "fail[ure] to address the district court's alternate basis" for its grant of summary judgment rendered irrelevant the merit of the issue the plaintiffs did raise. 642 F. App'x 596, 599 (6th Cir. 2016); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1083 n.5 (6th Cir. 2010) (deeming a claim forfeited on appeal when plaintiffs failed to address the district court's dismissal of that claim); *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 272 (6th Cir. 2008) (affirming summary judgment and finding sanctionable plaintiffs' failure to "address meaningfully the district court's reasoning"); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1388 (10th Cir. 1997) (affirming

summary judgment on ground cited by district court but not addressed by appellant, finding appellant thus conceded the court's determination, defeating essential element of appellant's claim); *Brinkmann v. Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (finding appellant's failure to address merits of district court's opinion "the same as if he had not appealed that judgment").

Here, the Reeses reiterate the argument made before the district court in opposition to Defendant's summary judgment motion, based on the label's alleged violation of the FHSA. (Appellants' Br. at 17-25). Because they fail to address the district court's reasoning based on proximate cause, the Reeses are precluded from making their FHSA-based argument on appeal. *See Grosswiler*, 642 F. App'x at 599. Accordingly, we do not consider it. *See id.* We turn now to the basis upon which the district court did decide the Reeses' inadequate warning claim.

### 2. *Proximate cause*

Under Ohio law, a products liability claim based on a failure to warn "not only must convince the fact finder that the warning provided is unreasonable, hence inadequate, but . . . also must establish the existence of proximate cause between the [product] and the fact of the plaintiff's injury." *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 450-51 (6th Cir. 2000) (citing *Seley v. G.D. Searle Co.*, 423 N.E.2d 831, 838 (Ohio 1981); *see also* Ohio Rev. Code § 2307.73(A)(2)). Where a warning is adequate, a presumption is applied in the manufacturer's favor that the warning "will be read and heeded." *Rheinfrank v. Abbott Labs., Inc.*, 119 F. Supp. 3d 749, 782 (S.D. Ohio 2015) (citing *Seley*, 423 N.E.2d at 838. Where the warning is inadequate, in contrast, "Ohio law establishes a presumption, beneficial to the plaintiff and which the defendants must rebut, to establish proximate cause in the warning defect context." *Hisrich*, 226 F.3d at 451.

While the Reeses do not address proximate cause[5] directly, they appear to do so implicitly as part of their FHSA-based argument. The Reeses assert, for instance, that "[i]t is clear from the testimony and report of [Plaintiffs' expert] George Wharton that he believes the warnings on the Goof Off can *that would have prevented this tragic accident* were inconspicuous and inadequate." (Appellants' Br. at 23) (emphasis and alterations added).

Despite the artful drafting of the latter sentence, though, nowhere in the record did Wharton state that a more "[]conspicuous and []adequate" warning "would have prevented" the fire that injured Carol. The nearest Wharton came to such a statement forthrightly supporting proximate cause relating to inadequate warning was in his expert report. There he concluded that, while Carol "*did* notice and read the listing of principal hazards on the side panel of the 4.5-ounce can that were conspicuous due to red text and/or all capital letters," she "did not notice or read the *precautionary measures* on the side panel that were in black text and inconspicuous from the other printed material on the label." further concluded that the "fire most likely would have been prevented if [Carol] had noticed and read the precautionary measures."

However, at deposition, Wharton was asked if he could "say within a reasonable degree of certainty that some change in . . . [t]ypography, layout, or color would have prevented the fire[.]" Wharton replied: "Can I say within a reasonable degree of engineering certainty that if it had been a different color side panel, the fire wouldn't have happened? I don't think I can say that." At deposition, therefore, the Reeses' expert made a more qualified statement in relation to proximate cause than in his report. Wharton's deposition testimony drew the particular attention

---

[5]Defendants' expert R. Thomas Long, Jr., concluded that the fire was caused by Carol's improper use of the Product, including her "[f]ail[ure] to extinguish all flames and pilot lights" and "to provide adequate ventilation to prevent the buildup of vapors." He also concluded that "[n]o act or omission" by Defendants contributed to the fire. Defendants' expert Steve Arndt conducted a human factors analysis of the fire, concluding, in relevant part, that had Carol "complied with the instructions on the can, this incident would not have occurred."

of the district court, which noted that "even Plaintiffs' expert failed to opine that more conspicuous text would have altered the outcome in this case." *Rees*, 2017 U.S. Dist. LEXIS 161573, at *14. In this regard, Wharton's opinion failed to refute the conclusion of the human factors analysis conducted by Defendants' expert, Steve Arndt, that "[a]dditional or alternate warnings or instructions would not have prevented this incident."

Moreover, Carol herself testified that, at the Home Depot on August 12, 2013, she read the warning on the Goof Off 4.5-ounce can that read, "Danger!  Extremely flammable."  (*See* Appellants' Br. at 8).  Those words were printed in red boldface type on the label.  Carol testified, nonetheless, that she failed to read the entire label because she "basically was after what the product would do," and that she did not habitually read product labels in their entirety.  Further, when asked whether "any of the things" opposing counsel had asked Carol about regarding the label on the gallon can—"color, contrast, size, font, background, lack of symbols or pictures"— had "factor[ed] into [her] decision not to read the text on the gallon can," Carol replied, "No." Rather, she testified that she "didn't read the gallon can" because she was satisfied that it was the same product that she had already purchased in the 4.5-ounce size.

Carol testified that she understood that "extremely flammable" meant "that it's flammable. Don't smoke."  With regard to the specific precautions on the label, Carol's testimony was somewhat contradictory:  on the one hand, she testified that she "read the bigger letters, the darker letters, and the red letters."  On the other hand, she stated that she only read the phrases, "Danger! Extremely flammable" and "Danger!  Harmful or fatal if swallowed.  Vapor harmful.  Eye irritant," which were the only parts of the warning label printed in red.  Yet the precautionary instruction, "Keep away from heat, sparks, flame and all other sources of ignition.  Vapors may cause flash fire or ignite explosively," was printed in boldface, black, capital letters immediately following

the warning in red type, "Danger! Extremely flammable," at the very beginning of the text on the side label. Carol's testimony, therefore, makes it unclear whether she did or did not read the precautionary instructions—an uncertainty deepened by the Reeses' statement that Carol's test application of Goof Off from the 4.5-ounce can was "pursuant to instructions on the label." (Appellant's Br. at 2).

Because the Reeses' expert was unwilling to state that a different warning label would have avoided the fire, and because Carol testified that she read of the danger—flammability—that actually led to her injuries, and that her failure to read the clear precautionary instructions on the label had nothing to do with the color, size, or other characteristics of the text, the Reeses have failed to present a jury question as to the proximate causation element of their inadequate warning claim, thus negating an essential element of that claim. *See Elvis Presley Enters.*, 936 F.2d at 895. The Reeses' failure to address the district court's reasoning, in addition, means that they have forfeited their argument under the FHSA. *See Groswiler*, 642 F. App'x at 599. For these reasons, we conclude that the district court's grant of summary judgment to Defendants as to the Reeses' inadequate warning claim was proper.

### D.    Design Defect Claim

The Reeses allege that the gallon size of Goof Off was defective because of its size, which they contend makes it inherently and unreasonably dangerous. It was "recklessly dangerous," they argue, "to sell gallon containers [of the Product] to consumers who defendants knew, or should have known, would not appreciate the risk when using large quantities of the product in a basement."

As a preliminary matter with regard to this claim, Defendants argue that the Reeses' defective-design claim was improperly brought because it is really a disguised inadequate warning

claim. (Appellees' Br. at 32-34). "Many courts," they urge, "have recognized and prohibited creative plaintiff attempts to recast their failure to warn claims (and thereby avoid the defenses to same) as 'design defect' claims." (*Id.* at 33). While there is case law in support of this proposition, *see, e.g., Grenier v. Vermont Log Bldgs., Inc.,* 96 F.3d 559, 563-65 (1st Cir. 1996) (disallowing a "disguised" version of a "preempted labeling claim," "recast" as a design defect claim), the district court considered the design defect claim on the merits. Accordingly, we proceed to review its disposition of that claim.

### 1.      *Risk-Benefit Analysis*

In Ohio, a defective-product claim requires proof that "at the time [the product] left control of its manufacturer, the foreseeable risks associated with its design or formulation . . . exceeded the benefits associated with that design or formulation." Ohio Rev. Code § 2307.75(A). The statute then sets out a non-exhaustive list of risk factors, *id.*, § 2307.75(B), and benefit factors, *id.*, § 2307.75(C), to be weighed in making the determination as to such a claim.

With regard to the risks and benefits attendant to the gallon size of the Product, the Reeses assert that "it is the product's size (a gallon container) that renders it defectively designed because the risk associated with consumers using gallon containers far outweighs the benefits to consumers." The Reeses conceive that "[p]resumably the benefit of a gallon can to consumers is that fewer cans need to be purchased, or fewer trips to the store are necessary. Such benefits are min[u]scule when compared to the risk of burn injuries." This speculation is the extent of the Reeses' risk-benefit analysis regarding the gallon size of Product.

As the district court pointed out, the Reeses failed to "present[] evidence that the design of the gallon can actually increased the risk of harm," instead "simply alleg[ing] that there is a risk of a fire." *Rees*, 2017 U.S. Dist. LEXIS 161573, at *16-17. The Reeses' contention that the risk

attendant to using a gallon container of Goof Off "far outweighs the benefits to consumers" lacks evidentiary support. In fact, the Reeses' description of how Carol used the gallon size of Goof Off—by "pour[ing] some out directly onto the floor, little by little, as she worked to remove the adhesive"—mirrors precisely her use of the 4.5-ounce size, by "pour[ing] a little out and brush[ing] it." The Reeses thus offered no evidence that the greater quantity—gallon size—led to a more dangerous product.

Indeed, the Reeses offer no evidence as to the can's design; their brief is silent as to its shape, the material of which it is made, the nature and size of its spout or opening, how much Product pours out at a time, or any other relevant detail. They address none of the risk or benefit factors set forth in Ohio Rev. Code § 2307.75(B)-(C), nor do they present any evidence, expert or otherwise, to help this Court assess the degree of risk involved, or whether and to what extent the risk outweighs the benefit. Beyond the conclusory assertion that the Product's risks far exceeded its benefits at the gallon size, then, the Reeses fail to develop their design defect argument.

Unlike their inadequate warning claim, the Reeses offer no expert testimony as to the design defect claim. Citing case law holding that expert testimony "is not always required to prove the material elements of a design defect claim," the Reeses assert that their defective-design claim is just such an instance, where "neither the product nor its allegedly defective aspect is so complex as to require expert testimony as a matter of law." (Appellants' Br. at 16 (quoting *Atkins v. Gen. Motors Corp.*, 725 N.E.2d 727, 733 (Ohio Ct. App. 1999)). The district court disagreed, finding that "[w]hile the size of a can may be simple, the increased risk of acetone accumulation caused by the size of a container or . . . of its opening is exactly the kind of scientific question for which an expert opinion is needed." *Rees*, 2017 U.S. Dist. LEXIS 161573, at *17-18.

The Reeses further argue that "it does not take expert testimony" to establish that the gallon size's risk exceeds its benefit, because the difference between 4.5-ounce and gallon sized Goof Off is like the difference between selling "small butane lighters" and "military grade flame-throwers" to light backyard grills. (Appellant's Br. at 16). We find this argument disingenuous at best. Differently sized containers of the same solvent are patently not analogous to the difference between a hand-held lighter and a combat weapon such as a flame-thrower. But more than the specious analogy, the real problem with the argument is its assertion of a purportedly self-evident truth, unsupported by evidence. *See Pritchett v. Cottrell, Inc.*, 512 F.3d 1057, 1067 (8th Cir. 2008) (bare assertions fail to establish a jury question on a design defect claim).

It may well be that, as the Reeses argue, the simplicity of the design of the Goof Off container makes expert testimony unnecessary. (Appellant's Br. at 16); *see Newell Rubbermaid*, 676 F.3d at 529-30 (citing *Atkins*, 725 N.E.2d at 733 (expert testimony may not be needed where alleged product defect not highly complex). Yet the Reeses have failed to provide even non-expert testimony or circumstantial evidence of the allegedly unreasonable dangerousness of the gallon container. *See Greene v. B.F. Goodrich Avionics Sys.*, 409 F.3d 784, 791-94 (6th Cir. 2005).

Because the Reeses have failed to present a jury question as to the allegedly defective design of the gallon size of Goof Off, we conclude that the district court's grant of summary judgment to Defendants as to this claim was proper. However, even if the Reeses had presented a jury question as to their design defect claim, they were also required to offer an alternative design that met certain statutory criteria. We turn next to that element of a design defect claim.

### 2. *Alternative Design*

OPLA provides that "[a] product is not defective in design . . . if, at the time the product left the control of its manufacturer, a practical and technically feasible alternative design or

formulation was not available that would have prevented the harm for which the claimant seeks to recover compensatory damages without substantially impairing the usefulness or intended purpose of the product." Ohio Rev. Code § 2307.75(F). While the statute does not indicate which party has the burden of production, case law places that burden on the plaintiff: "Although [] subsection [2307.75(F)] does not state that it is a plaintiff's burden to prove an alternative design, the Sixth Circuit has so held." *Monroe v. Novartis Pharms. Corp.*, 29 F. Supp. 3d 1115, 1124 (S.D. Ohio 2014) (citing *McGrath v. Gen. Motors Corp.*, 26 F. App'x 506, 510 (6th Cir. 2002)); *see also Zang v. Cones*, 34 N.E.3d 955, 961 (Ohio Ct. App. 2015) (defective design claim requires plaintiff to demonstrate feasible alternative design).

The Reeses state that "[i]t is quite one thing to market and sell 4.5 ounce containers of Goof Off, an admittedly highly flammable and hazardous product, but recklessly dangerous to sell gallon containers to consumers whom appellees knew, or should have known, would not appreciate the risk when using larger quantities of the product in a basement." (Appellants' Br. at 15). However, the Reeses fail to offer an alternative design, as plaintiffs must do in a products liability action based on defective design. *See* Ohio Rev. Code § 2307.75(F); *Monroe*, 29 F. Supp. 3d at 1124.

The Reeses' argument that "the product should not be sold to ordinary consumers in gallon containers and sales in those quantities should be limited to professional craftsmen," (Appellants' Br. at 15), concerns the proper channels of sale of the Product; it does not offer an alternative design. The Reeses have failed to "adduce[] evidence . . . [of] a safe alternative design that does not impair the usefulness" of the product." *See Butts v. OMG, Inc.*, No. 1:11-CV-918, 2014 U.S. Dist. LEXIS 127380, at *34 (S.D. Ohio, Sept. 11, 2014); *Zang*, 34 N.E.3d at 961.

Accordingly, we find that summary judgment in favor of Defendants as to the Reeses' design defect claim was proper on the alternative ground that the Reeses failed to meet the "alternative design" requirement of Ohio Rev. Code § 2307.75(F).

### E.   Retailer Negligence Claim

OPLA provides, in relevant part, that a supplier is liable for a products liability claim where that supplier "was negligent and that, [sic] negligence was a proximate cause" of the harm for which recovery is sought.   Ohio Rev. Code § 2307.78(A)(1).   Under Ohio law, a plaintiff in a products liability action based upon negligence "must show that the defendant owed him a duty, that the duty was breached and that the injury proximately resulted from the breach."   *Becton v. Starbucks Corp.*, 491 F. Supp. 2d 737, 745-46 (S.D. Ohio 2007) (quoting *Freas v. Prater Constr. Corp., Inc.*, 573 N.E.2d 27, 30 (Ohio 1991)).   Because the district court properly found an insufficient showing of proximate cause as to the Reeses' inadequate warning claim, and insufficient evidence to create a jury question as to the design defect claim, the grant of summary judgment to HD Inc. on the retailer negligence claim was also proper.

### III.   Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.